[S. F. No. 277. Department One.—March 17, 1896.]

ARTHUR D. THOMPSON, APPELLANT, v. BOARD OF SUPERVISORS OF COUNTY OF ALAMEDA ET AL., RESPONDENTS.

ACT REGULATING SALE OF FRANCHISES—COUNTIES—CONSTITUTIONAL LAW —SUFFICIENCY OF TITLE.—The act of March 23, 1893, "providing for the sale of railroad franchises in municipalities, and relative to granting of franchises," and requiring franchises to be "awarded to the highest bidder," sufficiently embraces in the latter clause of the title the subject matter of the issuance and sale of franchises by counties through their boards of supervisors, though such counties are not properly within the designation of municipalities.

ID. — ACT NOT REPEALED BY COUNTY GOVERNMENT ACT. — The act of March 23, 1893, providing for the sale of franchises to the highest bidder, was not repealed by subdivision 40 of section 25 of the County Government Act, which went into effect the following day, giving to boards of supervisors the general power to fix the terms, conditions, and restrictions upon which franchises will be granted, since full force and effect may be given to both statutes.

ID.—REPEAL BY IMPLICATION NOT FAVORED.—The law looks with disfavor upon repeals by implication, and will not sustain such repeal where there is no such inconsistency as to call for a determination that the earlier provision was repealed by the later.

ID. — CONSTRUCTION OF STATUTE — SALE TO HIGHEST BIDDER — CASH PAYMENT — AGREEMENT FOR PERCENTAGE NOT A LEGAL BID. — The act of March 23, 1893, providing for a sale of franchises to the highest bidder, without stating other terms and conditions of sale, means, by implication, that the franchise must be sold for cash, nor does the law permit a bid in any other kind of property than money; and an agreement to pay a percentage of the gross receipts of the road, when in operation, cannot be received as a legal bid or tender under the act.

ID.—FRANCHISE FOR ELECTRIC RAILROAD—MANDAMUS—SHOWING AS TO HIGHEST BIDDER.—In order to entitle a bidder for a franchise for an electric railroad under the act of March 23, 1893, to maintain a petition for a mandamus to compel the awarding of a bid to him, he must show himself to be the highest bidder for cash, and it is not sufficient that he has offered to pay a higher percentage of the gross receipts of the railroad, if another bidder has made a higher cash offer.

APPEAL from a judgment of the Superior Court of Alameda County.   F. B. OGDEN, Judge.

The facts are stated in the opinion of the court.

*Samuel Bell McKee*, for Appellant.

The act is not unconstitutional, as all the subjects in the body of the act are fairly and reasonably expressed in the title.   (Const., art. IV., sec. 24; *Ex parte Liddell*, 93 Cal. 633; *Abeel* v. *Clark*, 84 Cal. 226; *People* v. *Superior Court*, 100 Cal. 105, 121; *Longan* v. *County of Solano*, 65 Cal. 122; *San Francisco etc. R. R. Co.* v. *Board of Equalization*, 60 Cal. 12–34; *San Francisco* v. *Canavan*, 42 Cal. 558; *Payne* v. *Treadwell*, 16 Cal. 233; *Hart* v. *Burnett*, 15 Cal. 567; *Hawkins* v. *Roberts*, 45 Cal. 38; *Morgan* v. *Menzies*, 60 Cal. 341; *Iowa Railroad Land Co.* v. *Carroll County*, 39 Iowa, 151; *Dowlan* v. *Sibley County*, 36 Minn. 430; *Askew* v. *Hale County*, 54 Ala. 639; 25 Am. Rep. 730; Cooley's Constitutional Limitations, 141, 159; *Davis* v. *State*, 61 Am. Dec. 331, note; *Baltimore etc. R. R. Co.* v. *County of Jefferson*, 29 Fed. Rep. 307; *People* v. *Reis*, 76 Cal. 269–79; *Matter of Maguire*, 57 Cal. 604; *Oakland Pav. Co.* v. *Hilton*, 69 Cal. 491; *Miller* v. *Dunn*, 72 Cal. 465; 1 Am. St. Rep. 67; *Farrell* v. *Board of Trustees*, 85 Cal. 414; *Curry* v. *Sioux City*, 62 Iowa, 102.)

*Charles E. Snook*, for Respondent.

The act is unconstitutional.   (*People* v. *Parks*, 58 Cal. 624; Const., art. IV, sec. 24, art. XI, sec. 1; *People* v. *McFadden*, 81 Cal. 498; 15 Am. St. Rep. 66.)   The act has been repealed as to counties.   (Stats. 1893, p. 346; Sedgwick on Statutory and Constitutional Law, 124; *Sacramento* v. *Bird*, 15 Cal. 295; *State* v. *Conkling*, 19 Cal. 512; *Fraser* v. *Alexander*, 75 Cal. 147, et seq.) Thompson's bid was not the highest or best bid.   (*Riehl* v. *San Jose*, 101 Cal. 442.)

GAROUTTE, J. — This is a proceeding by mandate to compel the board of supervisors of Alameda county to accept the bid or tender of one Thompson, the petitioner,

and to declare him the highest bidder at the sale of a franchise for an electric railroad upon a certain defined route over the highways of that county. The proceedings of the board of supervisors leading up to the sale of this franchise were taken under a recent act of the legislature found in the statutes of 1893, page 288. That statute is entitled: "An act providing for the sale of railroad and other franchises in municipalities, and relative to granting franchises," and provides: "Every franchise or privilege to erect or lay telegraph or telephone wires, to construct or operate railroads along or upon any public street or highway, or to exercise any other privilege whatever, hereafter proposed to be granted by the board of supervisors, common council, or other governing or legislative body of any county, city and county, city, town, or district within this state, shall be granted upon the conditions in this act provided, and not otherwise." The act then prescribes the character of notice to be given for the sale, the time of the publication thereof, and fixes the day when tenders will be received for such franchise or privilege. The concluding clause of the section is: "The franchise or privileges must then be awarded to the highest bidder."

It is urged by respondents that the act is unconstitutional as being violative of section 24, article IV, of the constitution of this state, which declares: "Every act shall embrace but one subject, which shall be expressed in its title." The alleged violation is claimed to consist in this: That the title refers to sales of franchises by municipalities only, while the body of the act also attempts to deal with franchises issued by counties at the hands of their respective boards of supervisors. We have no doubt but that the word "municipalities," as used in the title of the act, is not broad enough to include counties, but the title proceeds further and uses the very general language, "and relative to the granting of franchises." These words are broad, not limited in terms to municipalities, and appear by a fair and rea-

sonable construction to cover all the legislation found in the body of the act.

The act went into effect March 23, 1893, and it is insisted that it was repealed by subdivision 40 of section 25 of the County Government Act, which went into effect upon the following day. That section declares the general permanent powers of boards of supervisors, and subdivision 40 thereof gives the board power "to grant franchises along and over the public roads and highways for all lawful purposes, upon such terms and conditions and restrictions as, in their judgment, may be necessary and proper, and in such manner as to present the least possible obstruction and inconvenience to the traveling public." The law looks with disfavor upon repeals by implication, and we see no such inconsistency in these two provisions as to call for a determination by this court that the earlier provision was repealed by the later. Full force and effect may be given to both. The franchise may be sold to the highest bidder, and still the terms, conditions, and restrictions upon which the franchise will be granted may be fixed by the board of supervisors under its general p r-manent powers. We conclude there is no repeal of that portion of the statute here involved by subdivision 40 of section 25 of the County Government Act.

We pass to a consideration of the tenders or bids made for the franchise. There are various matters discussed by counsel pertaining to this question, but, weighing the case from the angle at which we view it, the consideration of a single one disposes of this litigation. The act declares that the franchise must be awarded by the board of supervisors to the *highest bidder;* and, in order that petitioner may be entitled to the writ asked for, he must show himself to be such bidder. There were but two tenders or bids presented upon the day fixed for the sale. Vandercook, the successful buyer, made a bid to the following effect: He offered twenty-five dollars cash, and also agreed "to pay all of the expenses of advertis-

ing in connection with the said matters, and also agreed to erect and maintain clusters of five incandescent lamps each, or their equivalent, at twenty different places along the route described, at such locations as the board might direct, and also agreed to furnish said county power sufficient to run a ten-horse power motor at the county infirmary in Alameda county, when and during the time the railroad is in operation, and further agreed to pay to the county of Alameda one-fourth of one per cent of the gross receipts of the said railroad after the first five years of operation." The petitioner, Thompson, made a bid offering to give the county two per cent of the gross receipts after the road had been completed five years. The board refused to accept his bid, whereupon he then and there made another bid, substantially duplicating Vandercook's bid, except as to the percentage of the gross receipts, and offered two per cent of the gross receipts as aforesaid. Respondent insists that there are material differences in these two bids in other respects, but for present purposes we may assume them to be duplicates in the conditions and terms stated.

The only legally substantial thing we find in petitioner's bid is the offer of twenty-five dollars cash. When the law says a franchise must be sold to the highest bidder, without stating other terms or conditions of sale, it means sold for cash. It does not contemplate that it may be bartered away for meats and produce to feed the inmates of the county infirmary, or traded off for horses to be used in the fire department of the municipality. The moment you give a construction to the law by which the officers selling may accept a consideration for the franchise in any other commodity than money, the whole purpose and object of the act becomes a nullity, for then a discretion is vested in such officers which most probably is not subject to review; and values of personal property to be received, or services to be rendered in return for privileges and franchises dealt out, may assume magnified proportions in the eyes of the municipal or county officers conducting

the sale entirely unjustified by the actual facts. If such things were allowed, the law would be a failure and utterly inadequate to meet the purposes for which it was enacted. It would thus seem that petitioner's offer to furnish power for the county infirmary, and erect clusters of electric lamps at twenty different points upon the road, cannot be considered; for the officers intrusted with the sale had no more right to accept such properties and benefits in consideration of the franchise than they had to accept horses, cattle, or sheep.

We are also clear in holding that an agreement to pay a percentage of the gross receipts of the road, after completion and when in operation, cannot be received as a legal bid or tender under this act. As already suggested, when a statute provides that property shall be sold to the highest bidder, in the absence of anything in the statute to the contrary, it must be held to mean "to the highest bidder for cash." The gross receipts of a prospective electric road may be little, and they may be much. The sum total of its annual receipts is a most indefinite and uncertain quantity. Such amount is elusive and dependent upon many conditions. The franchise may be bought and the road put in operation for the single purpose of shutting off competition with other roads, and with no intention of making its gross receipts anything but merely nominal; and, under such circumstances, the bidder might well offer ten, twenty, or thirty per cent of its gross receipts for the franchise. Parties desiring to purchase in good faith, for the purpose of operating a competing line, could not afford to make any such bid. At the same time a bid from them of two per cent of the gross receipts would bring more money to the county or municipal treasury than the higher offer from the other parties. These suggestions show how unsatisfactory and indefinite sales of franchises and privileges based upon a percentage of gross receipts would be. But, beyond all such reasons, the statute contemplates a cash sale, and a percentage of gross receipts is in no sense cash. For the foregoing

reasons we are justified in holding that petitioner has not shown himself to be the highest bidder, and his application for a writ of mandate was properly denied. It becomes unnecessary to discuss the legal appropriateness of the remedy of mandate, in view of what has been said.

The judgment is affirmed.

Harrison, J., and Van Fleet, J., concurred.

Hearing in Bank denied.