[Civ. No. 14736. First Dist., Div. Two. June 25, 1951.]

GEORGE HURLEY et al., Respondents, v. PAUL RUBIS et al., Appellants.

Noland & Lawson for Appellants.

June D. Borina, District Attorney (Santa Cruz County), John L. McCarthy, Deputy District Attorney, and Wyckoff, Gardner, Parker & Boyle for Respondents.

NOURSE, P. J.— The two elementary school districts of Moss Landing and Springfield, both located in Monterey County, elected to form a union elementary school district on November 8, 1949. Prior thereto the Moss Landing District was a part of the Salinas Union High School District and the Springfield District was a part of the Watsonville Joint Union High School District. Acting under the provisions of section 3897 of the Education Code, an election in the Springfield District was held on December 29, 1949, at which election a majority of the voters elected to remain a part of the Watsonville Joint Union High School District and not to become a part of the Salinas Union High School District. Thereafter at an election held in the Moss Landing District the voters elected to remain a part of the Salinas Union High School District and not to become a part of the Watsonville Joint Union High School District. On January 24, 1950, a second election was held in the Springfield Elementary Dis-

trict at which time the electors voted to become a part of the Salinas Union High School District.

This action was instituted by the officers of the Watsonville Joint Union High School District to test the validity of the second election and to have it decreed that the Springfield District remain as a part of the Watsonville Joint Union High School District. The decision calls for an interpretation of sections 3891 to 3898 of the Education Code with such amendments as were made in 1949, Statutes 1949, chapter 1529. The arguments of counsel are based particularly on the provisions of section 3897 as amended in 1949 which read in part: "Where a new union or joint union district is formed from territory situated in two or more high school districts or situated partly within a high school district and partly in no high school district, the boundaries of the high school districts involved are not changed; provided, however, that prior to the first day of February next succeeding the formation of the union or joint union, or within one year of the date of the election to form the union or joint union, any component district of such union or joint union school district may elect to become a part of any high school district, a portion of the territory of which is embraced within the union or joint union school district."

A more logical approach would seem to be that suggested in the opinion of the trial judge intimating that when the Springfield District on December 29, 1949, elected to remain a part of the Watsonville Joint Union High School District its status as such thereupon became fixed so that if it thereafter desired to be excluded from that district and to join the Salinas Union High School District it must follow the procedure for withdrawal outlined in section 3691 of the Education Code.

After a full hearing, the learned trial judge rendered an opinion in writing in support of the judgment, the portion of which relating particularly to the applicability of sections 3691 to 3694 of the Education Code we quote with approval as follows:

"Now the Legislature did not expressly repeal sections 3691 to 3694 of the Education Code in its 1949 Session. Those sections are still in force. Repeals by implication not favored. It is only when two statutory provisions are absolutely repugnant to each other that the repeal of the earlier statute will be declared. *People* v. *Sands,* 102 Cal. 12 [36 P. 404] ; *Thompson* v. *Board of Supervisors,* 111 Cal. 553 [44 P. 230] ; *Estate of Brewer,* 156 Cal. 89 [103 P. 486]. In the comparative con-

struction of statutes they are to be harmonized as fully as may be, so as to give them complete and reasonable effect. *City of Los Angeles* v. *Los Angeles Pac. Co.*, 31 Cal.App. 100, 108 [159 P. 992].

''It is also fundamental that the courts must construe a statute according to the intent of the Legislature, the intent being the vital part and the primary rule of construction being to ascertain and give effect to that intent and to seek for the intent in every legitimate way. *Blumenthal* v. *Larson*, 79 Cal.App. 726 [248 P. 681, 251 P. 241]; *Marshall* v. *Williams*, 85 Cal.App. 507 [259 P. 970].

''It is a cardinal rule that a statute free from uncertainty and ambiguity needs no interpretations. A court may not by judicial construction substitute its idea of the intent of a statute when that intent is unmistakably expressed and when the statute is not ambiguous or uncertain; but if such uncertainty exists a necessity for construction follows. Statutes should be so construed as to give effect to all their provisions. *Cory* v. *Cooper*, 117 Cal.App. 495 at 500 and 502 [4 P.2d 581].

''The Education Code is to be liberally construed, with a view to effect its objects and to promote justice (Sec. 3). The singular number includes the plural and the plural the singular when used in said code (Sec. 18). Therefore it is not of much aid to construction to say the words 'an election' were used instead of elections in ascertaining the intent of the Legislature because the mere use of the singular does not of itself indicate an intent to restrict the School Boards and County Superintendents power to calling but one election on the subject. So that it may be said that the intent and purpose of the 1949 amendment to the section in question is not entirely clear. On such a case to ascertain the spirit, intentions and purpose of the law, a court may look into contemporaneous and prior legislation on the same subject that is to say by taking into account such matters as the history of legislations affecting the same or closely kindred subjects, *Grannis* v. *Superior Court*, 146 Cal. 245-247 [79 P. 891, 106 Am.St.Rep. 23]; *People* v. *Ventura Refining Co.*, 204 Cal. 286 [268 P. 347, 283 P. 60].

''The Court has endeavored to do this. The Court notes that in the Chapter amending said section 3897 the Legislature declared in the emergency clause that in the interest of public peace, health and safety 'it is necessary that the boundaries of such districts be determined as speedily as possible.'

"There is no record kept of the debates on the floor of the houses of the Legislature so that the history of legislation can only be derived from the various amendments to the law, from the various forms of the law during the course of its passage and from entries in the journals of the two houses, concerning the law during the course of its passage. So far as the court has been able to determine there is nothing in the Senate or Assembly Journal entries relating to the sections of the Education Code heretofore mentioned that reveals the intent of the Legislature on the issue here in question.

"So far as the Court can determine there is nothing in the legislative history of the sections of the Education Code here in question from their enactments as parts of the Political Code through the School Code to the present other than the above quoted words from the emergency clause of the 1949 amendment to said section 3897 that can assist a court in determining the intent of the Legislature.

". . . After making such a choice by the first election held in December 1949 the electors of Springfield School District had exercised their right to so choose and elected to remain a part of Watsonville Joint Union High School District and thereafter if the electors of said Springfield School District desired to be excluded from the district it had theretofore chosen to become a part of they must proceed under section 3691 to section 3694 of the Education Code. Such a construction gives effect to all the sections of the School Code now in effect and pertinent to the question here involved. As this election was not called and held pursuant to said section under the law the court is compelled and does hereby declare it to be a nullity."

Amplifying the reasoning of the foregoing opinion we may add: The two elementary districts voted to unite on November 8, 1949. Under section 3897 of the Education Code they could vote to become a part of either high school district at any time "within one year" of that date. Under appellants' theory they could vote "yes" or "no" as many times during that year as the superintendent of schools might call an election. The result would cause uncertainty as to the status of both the elementary and the high school district during that whole period causing doubt on the power to issue bonds or to levy taxes for necessary school purposes. It was to avoid this confusion that the Legislature added the emergency clause to the 1949 statute reading in part (Stats. 1949, chap. 1529, § 5) : "The need for additional high school facilities demands that bonds be issued and new facilities erected by the high school

districts at the earliest possible opportunity. In order to determine the validity of such bonds and to settle all questions as to the liability of the elementary school districts for the bonds, *it is necessary that the boundaries of such districts be determined as speedily as possible* and it is therefore necessary that this act take immediate effect." (Italics ours.)

Manifestly the expressed purpose of this legislation could not be obtained if the boundaries of the high school districts were left undetermined throughout the taxing period of one year following the election with the right of the elementary district to vote "yes" then "no" and "yes" then "no" as many times during the year as the superintendent of schools chose to call an election.

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied July 25, 1951, and appellants' petition for a hearing by the Supreme Court was denied August 23, 1951.