[L. A. No. 17195. In Bank.—December 23, 1940.]

BAY CITIES TRANSIT COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

Hector P. Baida for Appellant.

Heller, Ehrman, White & McAuliffe, Donahue, Richards & Hamlin, Sloss & Turner, H. C. Lucas, John L. McNab, Hugh K. McKevitt, Chandler & Wright and Samuel W. Gardiner, as *Amici Curiae*, on Behalf of Appellant.

Ray L. Chesebro, City Attorney, and Frederick von Schrader, Assistant City Attorney, for Respondents.

John J. O'Toole, City Attorney (San Francisco), and Albert F. Shelly, Deputy City Attorney, as *Amici Curiae*, on Behalf of Respondents.

THE COURT.—The question for determination in this case is controlled by our decision this day filed in the case of *Los Angeles Railway Corporation* v. *City of Los Angeles*, L. A. No. 17460, *post*, p. 779 [108 Pac. (2d) 430]. The opinion of the District Court of Appeal, Second District, Division Two, to which the appeal herein was originally taken, contains a statement of the facts and a determination of the controversy in conformity with the views of this court expressed in its opinion in *Los Angeles Railway Corporation* v. *City of Los Angeles, supra*. We, therefore, adopt the *per curiam* opinion of the District Court of Appeal as the opinion of this court. It is as follows:

Plaintiff commenced this action to prevent the board of public utilities and transportation of the city of Los Angeles from interfering with the operation of plaintiff's bus line on the speedway in the Venice district of said city. Plaintiff contends that ordinance No. 58198, under the terms of which the city claims the right to divert the plaintiff's buses from the speedway, is ineffective for this purpose, since the subject matter of the ordinance is under the control of the railroad commission of the State of California. A general demurrer to the petition was sustained and, plaintiff declining to amend, a judgment of dismissal was entered from which this appeal is prosecuted.

Plaintiff operates a passenger bus line along a route lying partially within the city of Los Angeles and partially within the city of Santa Monica. In the year 1935 upon plaintiff's application for a certificate of public convenience and necessity, the railroad commission of the State of California made an order designating the route to be followed by plaintiff

in operating such bus line and restricting operations to that route only. In compliance with the requirements of Ordinance No. 58198 of the city of Los Angeles, plaintiff applied for and obtained a permit from the board of public utilities and transportation of such city to operate its bus line over those portions of the route designated by the railroad commission which were situated within the corporate limits of the city of Los Angeles. The only portion of such operation with which we are here concerned is the portion lying within the Venice district of the city of Los Angeles. Commencing in May, 1938, a series of hearings were held by the board of public utilities and transportation for the purpose of determining the convenience and necessity of the operation of plaintiff's buses over that portion of the designated route lying within the Venice district. As a result of these hearings the board found that the operation of buses over the portion of the designated route in question was extremely hazardous, and concluded that the portion of the operation lying within the Venice district should be rerouted in the interests of safety. Accordingly the board made its order that plaintiff's permit "be canceled, effective at 12 :01 A. M., March 5, 1939, and the Company be notified that this Board will, upon receipt of proper application, grant a new permit for the operation of said bus line over the Speedway from the Los Angeles-Santa Monica City Boundary to Navy Street", one-half of the traffic to be over the old route and the other half over a newly designated route.

Ordinance No. 58198 of the city of Los Angeles grants to the board of public utilities and transportation the power to issue permits for the operation of motor buses upon the public streets of the city, whether the operation is wholly or partly within the city limits, if it be found that public convenience and necessity so require. The ordinance further authorizes the board to revoke any license or permit granted by it. Section $50\frac{1}{4}$ of the Public Utilities Act (Act 6386, Deering's Gen. Laws, 1937) provides that no passenger stage corporation shall operate its stages over any public highway without first obtaining from the railroad commission a certificate of public convenience and necessity. By section $2\frac{1}{4}$ of the Public Utilities Act a "passenger stage corporation" is defined as one which operates passenger stages over any public highway in this state between fixed termini or over a regular route which is not exclusively within the limits of a

single incorporated city. The conflict between the legislative enactment and the ordinance, in so far as the latter purports to regulate operations only partly within the city limits, is at once apparent. ▮ We are called upon to determine whether the state or the city has the paramount authority and power to designate the route to be followed by a passenger stage corporation which operates motor buses between fixed termini or over a regular route not exclusively within the corporate limits of such city.

Section 50¼ of the Public Utilities Act provides: " . . . The railroad commission, in the exercise of the jurisdiction conferred upon it by the Constitution of this state and by this act, shall have power and authority to grant certificates of public convenience and necessity and make decisions and orders and to prescribe rules and regulations affecting passenger stage corporations, *notwithstanding the provisions of any ordinance or permit of any incorporated city . . . and in case of conflict between any such order, rule or regulation, and any such ordinance or permit, the certificate, decision, order, rule or regulation of the railroad commission shall in each instance prevail.*" ▮ It is manifest that in enacting section 50¼ it was the intention of the legislature to vest in the railroad commission exclusive jurisdiction in the matter of the regulation of passenger stage corporations not operating wholly within the corporate limits of a single city. The power of the legislature to grant to the railroad commission such exclusive jurisdiction appears to be settled by that portion of section 23, article XII of the state Constitution, which provides: " . . . The railroad commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities in the state of California, and to fix the rates to be charged .for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the legislature, *and the right of the legislature to confer powers upon the railroad commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this Constitution.* From and after the passage by the legislature of laws conferring powers upon the railroad commission respecting public utilities, all powers respecting such public utilities vested in boards of supervisors, or municipal councils, or other governing bodies of the several counties, cities and counties, cities and towns, in this state, or in any commission created by law and existing

at the time of the passage of such laws, shall cease so far as such powers shall conflict with the powers so conferred upon the railroad commission . . . ''

On behalf of defendants it is contended, however, that by virtue of other provisions of this same section of the Constitution, added by the amendments of 1911 and 1914, the asserted vested right of the city to enact and enforce the ordinance in question in the manner in which it is sought to be enforced is reserved to the city to the exclusion of any legislative control. These provisions of the amendments to section 23 are: '' . . . provided, however, that this section shall not affect such powers of control over public utilities as relate to the making and enforcement of local, police, sanitary and other regulations, other than the fixing of rates, vested in any city and county or incorporated city or town as, at an election to be held pursuant to law, a majority of the qualified electors of such city and county, or incorporated city or town, voting thereon, shall vote to retain, and until such election, such powers shall continue unimpaired . . . and provided, further that this section shall not affect the right of any city and county or incorporated city or town, to grant franchises for public utilities upon the terms and conditions and in the manner prescribed by law . . . '' Since the charter of the city of Los Angeles was amended in 1913 so as to grant to the city the power to supervise, control and regulate all public utilities in the city, defendants contend that the city had a *vested* right to pass the ordinance in question and to enforce it in the manner in which it is sought to be enforced in this case, upon the theory that it was merely the making and enforcing of a local, police, sanitary or other regulation. It does not appear that the power which the charter amendment purports to vest in the city has ever been surrendered by vote of the city.

It is settled that the term ''vested'' as used in section 23, article XII of the Constitution is limited to those powers possessed by a chartered city relating solely to the regulation and control of municipal affairs. (*City of San Mateo* v. *Railroad Commission,* 9 Cal. (2d) 1 [68 Pac. (2d) 713].) That the right to designate the route to be taken by plaintiff's buses is not a municipal affair is evident from the language used in *Ex parte Daniels,* 183 Cal. 636, 639 [192 Pac. 442, 21 A. L. R. 1172] : ''The streets of a city belong to the people of the state, and every citizen of the state has a right to the

use thereof, subject to legislative control. (*People* v. *County of Marin,* 103 Cal. 223, 232 [26 L. R. A. 659, 37 Pac. 203]; Elliott on Roads and Streets, 3d ed., secs. 25, 505, 543, 544, 1112, 1115; 3 Dillon on Municipal Corporations, 5th ed., sec. 1122.) The right of control over street traffic is an exercise of a part of the sovereign power of the state. (Elliott on Roads and Streets, sections cited, *supra.*) While it is true that the regulation of traffic upon a public street is of special interest to the people of a municipality, it does not follow that such regulation is a municipal affair; and if there is a doubt as to whether or not such regulation is a municipal affair, that doubt must be resolved in favor of the legislative authority of the state. The rule is that 'any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied'.'' The question whether or not the regulation of the use of city streets for commercial purposes is a matter for legislative or municipal control has been decided by the Supreme Court in *Morel* v. *Railroad Commission,* 11 Cal. (2d) 488, at page 500 [81 Pac. (2d) 144], where it is held that: '' . . . whenever the state of California sees fit to adopt a general scheme for the regulation and control of motor vehicles upon the public highways of the state, the entire control over whatever phases of the subject are covered by state legislation ceases in so far as municipal or local legislation is concerned.'' That the provisions of the Public Utilities Act here under consideration constitute a general scheme for the regulation and control of motor vehicles upon the public highways of the state cannot be doubted.

The conclusion at which we have arrived is in harmony with the decision of the appellate department of the superior court of Los Angeles County in *People* v. *Willert,* 37 Cal. App. (2d) (Supp.) 729 [93 Pac. (2d) 872], wherein it was held that the criminal provisions of the ordinance in question were inoperative. In the Willert case an employee of the Bay Cities Transit Company was prosecuted for driving one of the company's buses in the Venice district in the absence of a permit for such operation. The order of the trial court dismissing the action was affirmed by said appellate department in a well-reasoned opinion in which the ordinance was held to be ineffectual as being in conflict with the superior authority vested in the railroad commission.

■ Defendants contend that the right is reserved to the city to create franchises for public utilities and that under such right the city can control the operation of plaintiff's buses. It is unnecessary to pass upon this contention since there is no merit in defendants' claim that plaintiff's canceled permit was in fact a franchise. When the canceled permit is considered in the light of the charter provisions and ordinances relating to the granting of franchises, it is apparent that the permit was not a franchise granted "upon the terms and conditions and in the manner prescribed by law" as required by the Constitution. In this respect it is sufficient to note that many of the terms and conditions required by the charter and ordinances relating to the granting of franchises to be included in all franchises are omitted from the permit which was granted to plaintiff.

The question is not controlled by the cases relied on by the defendants, such as *Wright* v. *Los Angeles Ry. Corp.*, 14 Cal. (2d) 168 [93 Pac. (2d) 135], *Schulthiess* v. *Los Angeles Ry. Corp.*, 11 Cal. App. (2d) 525 [54 Pac. (2d) 49], and *Switzler* v. *Atchison etc. Ry. Co.*, 104 Cal. App. 138 [285 Pac. 918], wherein it was held that the power to enact certain police regulations governing public utilities was properly exercised by the municipality. In those cases, as pointed out in the Switzler case, there had been no action by the railroad commission with reference to the regulation of the public utility; there was no conflict between the action taken by the municipality and any order of the railroad commission; and there was no showing that the action taken by the municipality was in contravention of any act of the legislature or of any rule or regulation of the railroad commission.

The judgment is reversed with directions to the trial court to overrule the demurrer.

Mr. Justice Houser did not participate in the foregoing decision.