[L. A. No. 22597. In Bank. Apr. 15, 1955.]

THE PACIFIC TELEPHONE AND TELEGRAPH COMPANY (a Corporation), Respondent, v. CITY OF LOS ANGELES, Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and John L. Flynn, Assistant City Attorneys, and Weldon L. Weber, Deputy City Attorney, for Appellant.

Karl Brooks, City Attorney (Petaluma), Stephen B. Robinson, J. F. DuPaul, City Attorney (San Diego), Shelley J. Higgins, Assistant City Attorney, and T. B. Cosgrove, Special Counsel of San Diego, as Amici Curiae on behalf of Appellant.

Pillsbury, Madison & Sutro, John A. Sutro, Francis N. Marshall, Noble K. Gregory, Lawler, Felix & Hall, Oscar Lawler and Leslie C. Tupper for Respondent.

GIBSON, C. J.—The Pacific Telephone and Telegraph Company has been engaged in operating a telephone and telegraph system since January 2, 1907, and its lines are used in rendering a local, statewide and interstate communication service. The city of Los Angeles and surrounding areas are serviced by Pacific and connecting telephone companies. In 1951, shortly before a municipal franchise under which it had been operating was due to expire, Pacific applied to the city for a franchise to use the streets and other public places within the municipal boundaries as they existed in 1905. Territory added to the city after 1905 was not included in the scope of the application because, as to such areas, Pacific claimed it held a franchise from the state. The application was refused, and Pacific brought this action to obtain a declaration of its franchise rights and obligations. The city has appealed, contending that the judgment erroneously declares the respective rights of the parties.

■ Section 536 of the Civil Code,* as reenacted effective May 19, 1905, offers a franchise to telegraph and telephone companies to use the highways and other public places for their lines and equipment. This offer is accepted in its entirety by the construction, maintenance and operation of telegraph or telephone lines within the state. (*County of Los Angeles* v. *Southern Calif. Tel. Co.*, 32 Cal.2d 378, 382, 384 [196 P.2d 773]; *Postal Tel.-Cable Co.* v. *Railroad Com.*, 200 Cal. 463, 472-473 [254 P. 258].) ■ The privileges granted by section 536 must, of course, be exercised in accordance with the authority vested in the Public Utilities Commission by section 23 of article XII of the state Constitution and the statutes enacted pursuant thereto.

■ State franchise rights obtained by telephone companies under section 536 do not apply to areas within the 1905 boundaries of a city which, in May 1905, had a freeholders' charter giving it the power to grant a franchise to use its streets for telephone lines. (*Sunset Tel. & Tel. Co.* v. *Pasadena*, 161 Cal. 265 [118 P. 796]; *City of San Diego* v. *Southern Calif. Tel. Co.*, 92 Cal.App.2d 793 [208 P.2d 27]; *City*

*This section now appears as section 7901 of the Public Utilities Code, but it will be referred to in this opinion as section 536. It reads:

"Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this state, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters."

of *Salinas* v. *Pacific Tel. & Tel. Co.*, 72 Cal.App.2d 494 [164 P.2d 905] ; see *County of Los Angeles* v. *Southern Calif. Tel. Co.*, 32 Cal.2d 378, 382 [196 P.2d 773].) ▮ The city of Los Angeles had such a charter in 1905, and it follows that Pacific may be required to obtain a municipal franchise to use streets and other public places within the 1905 boundaries of the city.

▮ Large areas have been annexed to the city since 1905. Pacific or its predecessors were engaged in supplying telephone service to subscribers in nearly all of those areas before they became part of the city, and the state franchise rights thus acquired were not lost by reason of the subsequent annexations. (*City of San Diego* v. *Southern Calif. Tel. Co.*, 92 Cal.App.2d 793, 808 [208 P.2d 27] ; see *County of Los Angeles* v. *Southern Calif. Tel. Co.*, 32 Cal.2d 378, 384 [196 P.2d 773] ; *Western Union Tel. Co.* v. *Hopkins*, 160 Cal. 106, 118 [116 P. 557].) Some areas were uninhabited at the time of their annexation, and Pacific and its predecessors supplied telephone service to such sections as they became populated. ▮ The city claims that state franchise rights did not extend into areas where there had been no streets or telephone service prior to annexation. We do not agree. The grant of a state franchise to use highways and other public places in operating a telephone system necessarily contemplates that new streets will be opened and old ones lengthened as undeveloped areas become settled. (See *Russell* v. *Sebastian*, 233 U.S. 195, 209-210 [34 S.Ct. 517, 58 L.Ed. 912].) ▮ In acquiring a franchise under section 536, Pacific assumed the obligation to provide the people in the area it served with an adequate communications system, and this obligation necessarily included the extension of facilities into newly developed sections as the demand for service arose. ▮ A telephone system must be continually expanded to meet the demands of the public, and the right to use streets and public places in establishing such a system is commensurate with the duty which is undertaken to provide adequate service. ▮ The trial court properly concluded that the state franchise held by Pacific gave it the right to construct and maintain its lines and equipment on the streets and other public places located within all areas which have been annexed to or consolidated with the city since 1905.

The next question is whether the evidence supports the finding of the trial court that Pacific has not forfeited the rights held by it under section 536 in areas added to the

city after 1905. In 1916 Southern California Telephone Company, a subsidiary of Pacific, acquired a 50-year franchise granted by the city to M. A. King in 1902. The transfer of the King franchise to Southern was approved by the city in ordinance No. 35474, enacted in 1916, which provided that Southern, its successors and assigns, should operate within the city solely under the King franchise until 1952, and that it should surrender, at the option of the city, all rights acquired by it through any other franchises theretofore granted and effective in any part of the city as the same then existed, or through any other franchises theretofore or thereafter granted in territory outside the city which might thereafter become a part of it. Southern transferred the King franchise to Pacific in 1947, and Pacific agreed to be bound by the terms of the 1916 ordinance. In 1950 the city council passed a resolution which purported to require Pacific to surrender all rights and privileges which it held under the state franchise in areas within the city.

A telephone company does not forfeit rights acquired under section 536 merely by operating under a municipal franchise in areas covered by its state franchise. (See *City of San Diego* v. *Southern Calif. Tel. Co.*, 92 Cal.App.2d 793, 807-808 [208 P.2d 27] ; *Oakland* v. *Great Western Power Co.*, 186 Cal. 570, 584 [200 P. 395].) The question then is whether Pacific may be compelled, at the option of the city, to surrender its state franchise rights because it agreed to be bound by the terms of the 1916 ordinance.

The ordinance makes no reference to section 536 or to the forfeiture of any rights acquired from the state. Extrinsic evidence, consisting of reports and recommendations considered by the city council prior to the adoption of the ordinance, was received without objection to aid the trial court in determining the meaning and effect of the surrender provision. It appears that competing telephone companies were operating in the Los Angeles area, that there was no interchange of service between the subscribers of the different companies and that the city wished to eliminate the resultant inconvenience and expense by the consolidation of all telephone franchises and properties into a single system owned and operated by one company. In order to effect such a consolidation, Southern proposed to acquire the King franchise, several franchises granted by neighboring cities, and two county franchises which covered part of the city as well as unincorporated territory. The city engineer recommended

that, as a condition to the consent of the city to the assignment of the King franchise, Southern should agree to vacate all other franchises ''whether county or city'' covering any portions of the city as then defined and sections without the city as they became part of it, so that all operations within the city would be confined to the King franchise.

Since the object of the plan of consolidation was the establishment of a unified telephone system, the court could reasonably find that the purpose of the surrender provision was to insure the continuation of this plan during the life of the King franchise by requiring Southern and its successors to relinquish any rights they held or might acquire under other municipal franchises or under county franchises covering any new territory which should be annexed to the city and that the framers of the ordinance did not intend to provide for the surrender of rights acquired under state franchises. Moreover, no consent to the surrender of the state franchises held by Pacific and its predecessors was obtained from the Railroad Commission or its successor, the Public Utilities Commission, as required by section 851 of the Public Utilities Code. The commission expressly approved the transfer of municipal and county franchises necessary to effect the consolidation plan, and it is significant that no reference was made in the commission's order to the surrender of any state franchise held by any of the companies involved. The finding and conclusion of the trial court that neither Southern nor Pacific surrendered or forfeited any rights or obligations under their state franchises is amply supported by the record.

As we have seen, Pacific may be required to obtain a municipal franchise to use the streets and other public places for the construction and maintenance of telephone lines within the city boundaries as they existed in 1905. The city contends that it may also require Pacific to obtain a municipal franchise to conduct ''a telephone business'' before Pacific can operate a telephone system anywhere in the city. It seems clear that the city does not have the power to grant such a franchise, as distinguished from one to use the streets and other public places for the construction and maintenance of telephone lines and that Pacific need not get permission from the city to engage in the telephone business.

The authority to grant a franchise to engage in the telephone business resides in the state, and the city is without power to require a telephone company to obtain such a

franchise unless the right to do so has been delegated to it by the state. (See *Oro Elec. Corp.* v. *Railroad Com.,* 169 Cal. 466, 477 [147 P. 118] ; *City of Salinas* v. *Pacific Tel. & Tel. Co.,* 72 Cal.App.2d 494, 498-499 [164 P.2d 905] ; *People ex rel. Metropolitan St. Ry. Co.* v. *State Board of Tax Comrs.,* 174 N.Y. 417 [67 N.E. 69, 72, 63 L.R.A. 884, 105 Am.St.Rep. 674] ; McQuillin on Municipal Corporations [3d ed. 1950], vol. 12, § 34.14.) The business of supplying the people with telephone service is not a municipal affair; it is a matter of statewide concern. (See *Oro Elec. Corp.* v. *Railroad Com.,* 169 Cal. 466, 475-476 [147 P. 118] ; *San Francisco* v. *Pacific Tel. & Tel. Co.,* 166 Cal. 244, 250-251 [135 P. 971] ; *City of San Diego* v. *Southern Calif. Tel. Co.,* 92 Cal.App.2d 793, 800-801 [208 P.2d 27] ; *People ex rel. Public Utilities Com.* v. *Mountain States Tel. & Tel. Co.,* 125 Colo. 167 [243 P.2d 397, 401].) Therefore, any delegation from the state to the city of authority to control the right of Pacific to do a telephone business should be clearly expressed, and any doubt as to whether there has been such a delegation must be resolved in favor of the state. (See *Bay Cities Transit Co.* v. *Los Angeles,* 16 Cal.2d 772, 777 [108 P.2d 435] ; *Oro Elec. Corp.* v. *Railroad Com.,* 169 Cal. 466, 477 [147 P. 118] ; *City of Salinas* v. *Pacific Tel. & Tel. Co.,* 72 Cal.App.2d 494, 498-499 [164 P.2d 905].) We are unable to find any constitutional or statutory provision conferring this authority on the city. On the other hand, the Legislature, pursuant to the authority contained in section 23 of article XII of the Constitution, as amended in 1914, has vested in the Public Utilities Commission the exclusive jurisdiction to supervise and regulate public utilities and to prescribe the character and quality of the service and fix the compensation therefor. (Pub. Util. Code, §§ 701-853, 1001, 1002, 2101.)

It is declared in section 23 of article XII that the right of the Legislature to confer powers upon the commission with respect to public utilities is plenary and unlimited by any provision of the Constitution, and that all powers respecting public utilities vested in cities shall cease insofar as they shall conflict with powers conferred upon the commission. It is provided, however, "that this section shall not affect such powers of control over public utilities as relate to the making and enforcement of local, police, sanitary and other regulations, other than the fixing of rates, vested in any city . . .''; and it is further provided "that this section shall not affect the right of any city . . . to grant fran-

chises for public utilities upon the terms and conditions and in the manner prescribed by law.'' ██ The first proviso quoted above relates solely to local regulations such as any municipality may exercise under its police powers. (See *Bay Cities Transit Co.* v. *Los Angeles,* 16 Cal.2d 772, 776 [108 P.2d 435] ; *City of San Mateo* v. *Railroad Com.,* 9 Cal.2d 1, 8 [68 P.2d 713] ; *Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441, 451-452 [166 P. 351] ; *People* v. *Willert,* 37 Cal. App.2d Supp. 729, 737-740 [93 P.2d 872].) ██ The second proviso does not confer any rights; it merely reserves to a city such power over franchises as may have been vested in it.

██ The city claims that section 19 of article XI of the Constitution as amended in 1911 in effect declares that the granting of a franchise to engage in the telephone business is a municipal affair and that, therefore, the right to grant such a franchise is reserved to the city. The section provides that a city ''may establish and operate public works for supplying its inhabitants with . . . telephone service or other means of communication . . .'' and that persons or corporations may do the same upon ''such conditions and under such regulations as the municipality may prescribe under its organic law. . . .'' There is nothing in this provision which is inconsistent with the established rule that the right to exist as a telephone corporation and conduct a telephone business is a matter of statewide concern and not a municipal affair. The statement printed on the ballot in support of the amendment describes its scope, as follows: ''The right of individuals or private corporations to operate these utilities will not be taken away, but such operation and the manner of using the public streets must be in accordance with such regulations as the cities may prescribe in their charters.'' ██ The section did not give a city the power to grant or withhold the right of a telephone company to do business, but, on the contrary, it recognized the existence of that right and merely authorized the city to regulate the manner in which the company might use the public streets.

The city attacks the declaration in the judgment that Pacific is entitled to use its lines interchangeably ''for transmitting telephone messages, telegraph messages, teletypewriter messages, telephotographs, program services (including radio and television broadcasts) and any other communication service by means of the transmission of electrical impulses.'' It is contended that the state franchise does not give Pacific

the right to use its telephone lines for the transmission of anything other than "articulate speech."

Section 536, which authorizes telephone companies to construct their lines along public highways, places no restrictions upon what may be transmitted by means of electrical impulses over those lines, and we are of the view that the rights of Pacific with respect to the uses to which its lines may be put are correctly declared in the judgment. If the state franchise granted to a telephone company were limited to the transmission of "articulate speech," the company would be required to obtain numerous local franchises in order to give its subscribers the benefit of the many and varied uses of telephone wires made possible by scientific development. Such a result would defeat the very purpose of section 536, as it would interfere substantially with the ability of telephone companies to provide adequate communication service to the people of the state. (See *County of Los Angeles* v. *Southern Calif. Tel. Co.,* 32 Cal.2d 378, 384-388 [196 P.2d 773].)

There is nothing in the cases of *Sunset Tel. & Tel. Co.* v. *Pasadena,* 161 Cal. 265 [118 P. 796], or *Hanford* v. *Hanford Gas & Power Co.,* 169 Cal. 749 [147 P. 969, L.R.A. 1915E 165], which requires us to construe section 536 as placing any restriction upon what may be transmitted over telephone lines by means of electrical impulses. The Pasadena case held that the grant to telegraph companies of the right to construct and maintain lines along streets and highways did not confer similar privileges upon telephone companies. In reaching this conclusion the court took into consideration the difference between the business of a telephone company and that of a telegraph company with respect to the extent of the burden which their operations place on public streets. It was pointed out that a telephone company must construct and maintain lines along many streets in order to serve its subscribers in a city, whereas a comparatively few streets are used by a company engaged exclusively in the transmission of telegraph messages. The Hanford case involved the construction of a provision of the Constitution which granted the right to use public streets so far as necessary to supply a city with gaslight. The court held that the privilege granted was specifically limited to the particular purpose expressed and that the gas company did not have a franchise to furnish gas for heat and power. As before stated, section 536 is not so limited, and it places no restriction upon

the communication purposes for which telephone lines may be used.

We come finally to a consideration of the provisions of the judgment with respect to the franchise fee which may be charged by the city for the use of the streets and other public places within the 1905 boundaries of the city. The judgment correctly declares that the city may not require Pacific to pay for such franchise any compensation based on revenues attributable to plant or investment located on private property inside the 1905 boundaries of the city or on private or public property outside the franchise area.

The fee which a city may exact for a franchise to use streets and other public property for the construction and maintenance of telephone lines and equipment is not a tax upon the property of the utility or a license charge for the privilege of operating its business; it is compensation for the privilege of using the streets and other public property within the territory covered by the franchise. (See *City of San Diego* v. *Southern Calif. Tel. Corp.*, 42 Cal.2d 110, 117-118 [266 P.2d 14] ; *County of Tulare* v. *City of Dinuba*, 188 Cal. 664, 674 [206 P. 983] ; *San Francisco-Oakland Terminal Rys.* v. *County of Alameda*, 66 Cal.App. 77, 82 [225 P. 304].)

The city has no power, either directly or indirectly, to exact a franchise fee from Pacific for the use of property belonging to it which is not located upon streets or other public places within the area covered by the franchise. (See *County of Tulare* v. *City of Dinuba*, 188 Cal. 664, 681 [206 P. 983] ; *Ocean Park etc. Corp.* v. *Santa Monica*, 40 Cal. App.2d 76, 84-87 [104 P.2d 668, 879] ; *Monrovia* v. *Southern Counties Gas Co.*, 111 Cal.App. 659, 660-661 [296 P. 117].)

The judgment also declares that the city may not require Pacific to provide it with free telephone service as a part of the compensation for the franchise. We are of the view that this part of the judgment cannot be allowed to stand. The city council is authorized by ordinance to award the franchise to the bidder offering to pay the highest percentage of gross receipts and such other compensation or consideration as may be prescribed by the council. (City Ordinance No. 58200, § 5.) It has been held that when a statute provides that a franchise must be sold to the highest bidder, without stating other terms or conditions, it means the sale must be for cash. (*Thompson* v. *Board of Supervisors*, 111 Cal. 553, 557-558 [44 P. 230].) However, the ordinance here expressly provides that the franchise fee may be based on a

percentage of gross receipts or that it may consist of or include such other compensation or consideration as the council may prescribe. We find nothing in the Constitution or the statutes which precludes the city from requiring a telephone company to furnish free service as a part of the franchise fee, provided the total charge is a reasonable one.

The portion of the judgment which declares that the city may not require free telephone service as a condition to the granting of a franchise is reversed with directions to the superior court to amend its findings of fact, conclusions of law and judgment in accordance with the views expressed in this opinion. In all other respects the judgment is affirmed. The parties shall bear their own costs on appeal.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied May 11, 1955.