[No. B026377. Second Dist., Div. Three. Sept. 15, 1988.]

SOUTHERN PACIFIC PIPE LINES, INC., Plaintiff and Respondent, v.
CITY OF LONG BEACH, Defendant and Appellant.

662

COUNSEL

John R. Calhoun, City Attorney, and Richard A. Alesso, Deputy City Attorney, for Defendant and Appellant.

James K. Hahn, City Attorney, Pedro B. Echverria and John F. Haggerty, Assistant City Attorneys, as Amici Curiae on behalf of Defendant and Appellant.

John H. Ernster, Anthony P. Parrille and Brown, Winfield & Canzoneri for Plaintiff and Respondent.

William A. Dorland, David M. Turner, Jonathan B. Eddison and Randall R. Morrow, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

CROSKEY, J.—Defendant, the City of Long Beach, (hereinafter, the City), appeals from a summary judgment granted to plaintiff Southern Pacific Pipe Lines, Inc. (plaintiff) in four consolidated cases.[1] The judgment provided for a refund to plaintiff of portions of the permit fees which the City had assessed plaintiff for the pipelines which plaintiff maintains under the City's streets. The judgment also directed the City to issue to plaintiff a certain franchise, and it adjudged that the City's municipal code provisions for permit fee schedules are not applicable to plaintiff, finding in effect that in this case, the City's ordinance has been preempted by provisions of the Public Utilities Code.

As the parties agree on appeal that there are essentially no disputed material facts, we are asked in this appeal to decide whether the relevant provisions of the City's code are indeed preempted by state law. However, our review of the constitutional and legislative scheme for control of public utilities and local franchises shows that the judgment must be reversed whether preemption exists or not.

PROCEDURAL AND FACTUAL BACKGROUND

Beginning in August 1982 plaintiff filed four complaints for partial refund of permit fees which it had paid to the City in the years 1982 through 1985, one complaint for each year. Pursuant to stipulation by the parties, the four cases were consolidated. After the parties filed an agreed statement of facts

[1] Amicus curiae briefs have been filed by the City of Los Angeles, on behalf of itself and 14 other cities in California, in support of the City's position, and by the Southern California Gas Company, in support of plaintiff's position.

plaintiff filed a motion for summary judgment or, in the alternative, summary adjudication of issues and the City filed opposition thereto. The trial court granted plaintiff summary judgment and the City filed a timely appeal.

The City of Long Beach is a chartered city whose charter contains provisions for granting franchises, permits and privileges to private persons, firms and corporations for use of the City's streets and other public places. Plaintiff is a pipeline corporation which operates as a public utility common carrier involved in California and interstate shipments of petroleum products for others. Plaintiff has constructed and operates portions of its pipeline system in subsurface portions of the streets of the City as part of its interstate petroleum pipeline system. To operate these lines in the City's streets, plaintiff obtained a pipeline permit in August 1955 and three supplements to the permit thereafter. Issuance of the permit and supplements were all pursuant to provisions of the City's municipal code as were the permit fee charges made by the City.

In 1981, the City amended its municipal code provisions for use of pipelines in city streets. The amendment provided that "facilities" such as plaintiff's pipelines could not be installed and maintained in City property without a valid franchise or a valid permit. It further provided that each permit holder pay fees which were higher than those which plaintiff had been paying prior to the amendment.

Plaintiff determined that the amendment's provisions for permits and permitees do not apply to plaintiff and that rather, the previously issued permits which plaintiff holds should be replaced by a franchise because plaintiff is a common carrier public utility. Based on that determination, on February 5, 1982, plaintiff applied for a franchise, stating in its application that the request was being made pursuant to sections 6001-6017 of the Public Utilities Code (which are commonly known as the Broughton Act) "and/or" sections 6201-6302 of that code (which are commonly known as the Franchise Act of 1937) and in particular section 6231.[2] Plaintiff's application for a franchise was denied by the City.[3]

---

[2] Unless otherwise indicated, all statutory references herein are to the Public Utilities Code.

[3] Although the portions of the City's ordinance which are at issue here provide for both "permits" and "franchises" as a means of lawfully using the City's property and although plaintiff sought to replace its permit with a franchise, in actuality this permit/franchise distinction is a distinction without a difference for purposes of this appeal. Section 6001 of the Broughton Act states that said act applies to "Every franchise *or privilege*" (italics added) proposed to be granted by a city, county or city and county to a public utility. In addition, neither of the parties nor the amici take issue with the distinction between permits and fran-

Commencing in 1982, plaintiff paid its yearly permit fees to the City under protest and sought a refund for a portion of those fees, specifically the difference between the amount billed each year by the City and the lesser amount plaintiff contended was due and owing under the Broughton Act or the Franchise Act of 1937. For the years 1982 through 1985, the City charged plaintiff pipeline fees totalling $182,157.45. Plaintiff contends that under the Public Utilities Code, the fees should only total $36,229 and therefore it is due a refund of $145,928.45. It is this latter amount, plus interest, which the trial court awarded plaintiff in its summary judgment.

### CONTENTIONS ON APPEAL

Plaintiff and amicus gas company contend that a city's granting of a franchise to use its streets for oil pipelines is a matter of statewide concern and therefore the provisions of the Broughton Act and the Franchise Act of 1937 govern the granting of such a franchise. The City and amicus cities contend that the granting of an oil pipeline franchise is solely a municipal affair and therefore a chartered city is not bound by those general law provisions.

### DISCUSSION

This case turns on (1) the constitutional and legislative scheme for the control of public utilities and (2) the constitutional and legislative scheme for the rights and duties of local subdivisions of the state with respect to their granting of franchises to public utilities for the use of public property within their boundaries.

### 1. *Public Utilities*

Section 3 of article XII of the Constitution states that common carriers are public utilities and are subject to control by the Legislature. The Public Utilities Commission "has historically been the agency charged by the Legislature with regulation of privately owned public utilities." (*Orange County Air Pollution Control Dist.* v. *Public Util. Com.* (1971) 4 Cal.3d 945, 947 [95 Cal.Rptr. 17, 484 P.2d 1361]; accord *American Microsystems, Inc.* v. *City of Santa Clara* (1982) 137 Cal.App.3d 1037, 1042 [187 Cal.Rptr. 550]; Cal. Const., art. XII, §§ 4-6; §§ 701, 702.) Article XII, section 8 of the Constitution states that local governing bodies may not regulate matters over which the Legislature grants regulatory power to the commission.

chises per se, but rather direct their arguments to whether the City must follow California's statutory provisions when granting plaintiff the right to use the City's property.

## 2. *Public Utility Franchises for Use of City Streets*

A franchise is a privilege conferred upon an individual or a corporation for use of a sovereign body's property. (*Mann* v. *City of Bakersfield* (1961) 192 Cal.App.2d 424, 429 [13 Cal.Rptr. 211].) With the exception of telephone and telegraph corporations, which receive their franchises directly from the state (§ 7901), the power to *grant* franchises to use the highways for secondary purposes, (such as pipelines under those highways), is generally delegated to the local subdivisions of the state. (*County of Inyo* v. *Hess* (1921) 53 Cal.App. 415, 418 [200 P. 373].) Under Government Code section 39732, cities are given the right to grant franchises for construction of public utilities and other matters; under Government Code section 26001, counties are given the right to grant franchises. While not conferring any rights by itself, article XII, section 8 of the Constitution specifically recognizes the right of cities "to grant franchises for public utilities or other businesses on terms, conditions, and in the manner prescribed by law." (Cal. Const., art. XII, § 8; *Pac. Tel. & Tel. Co.* v. *City of Los Angeles* (1955) 44 Cal.2d 272, 280-281 [282 P.2d 36].)

Neither the Broughton Act nor the Franchise Act of 1937, upon which the trial court relied in deciding that the permit fee scheme set up by the City was invalid, confer on local governments the power to grant franchises. Rather, they each provide procedures to be followed when other laws empower these local governments to grant franchises. (*County of L. A.* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 383 [196 P.2d 773]; *Pacific Tel. & Tel. Co.* v. *City & County of San Francisco* (1961) 197 Cal.App.2d 133, 149 [17 Cal.Rptr. 687].) The Broughton Act relates to franchises generally and applies to counties, cities and counties, and cities. (§ 6001.)[4] The Franchise Act of 1937, (which specifically states that it provides procedures *alternative* to those in the Broughton Act (§ 6204)), applies to gas, oil, water and electric franchises by "municipalities" (§ 6202),[5] which includes

---

[4] Section 6001 states: "Every franchise or privilege to erect or lay telegraph or telephone wires, to construct or operate street or interurban railroads upon any public street or highway, to lay gas pipes for the purpose of carrying gas for light, heat, or power, to erect poles or wires for transmitting electricity for light, heat, or power, along or upon any public street or highway, or to exercise any other privilege whatever proposed to be granted by the governing or legislative body of any county, city and county, or city shall be granted upon the conditions in this article provided, and not otherwise, except when such franchises are granted pursuant to Chapters 2 or 3 of this division. [Chapter 2 is the Franchise Act of 1937.]

"This article does not apply to franchises or privileges for railroads, or telegraph or telephone lines doing an interstate business, or to renewals of franchises for piers, chutes, or wharves, or to community antenna television systems, or to franchises or privileges for purposes not involving the furnishing of any service or commodity to the public or any portion thereof."

[5] Section 6202 states: "The legislative body of any municipality may grant a franchise to any person, firm, or corporation, whether operating under an existing franchise or not, to use,

counties (§ 6201.5); however, its provisions do not apply to *chartered* municipalities if those municipalities have in their charters provisions for the issuance of franchises, although chartered municipalities may nonetheless use the procedures set out in the Franchise Act of 1937 if they so choose (§ 6205).[6]

### 3. *The Charter City Issue*

The trial court's statement of decision shows that the court ruled in favor of plaintiff because it perceived the case to turn on the superiority of general law (in this case, the Broughton Act and the Franchise Act of 1937) over municipal ordinances, under article XI, section 5 of the Constitution. The trial court reached this conclusion because it found that the franchising of oil pipelines is a matter of statewide concern and not a municipal affair.

■ "As is made clear in the leading case of *Pipoly* v. *Benson* [(1942) 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515])], local governments (whether chartered or not) do not lack the power, nor are they forbidden by the Constitution, to legislate upon matters which are not of a local nature, nor is the Legislature forbidden to legislate with respect to local municipal affairs of a [chartered] municipality. Instead, in the event of conflict between the regulations of state and of local governments, or if the state legislation discloses an intent to preempt the field to the exclusion of local regulation, the question becomes one of predominance or superiority as between general state laws on the one hand and the local regulations on the other. [Citations.]" (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 62 [81 Cal.Rptr. 465, 460 P.2d 137].)

■ Under article XI, section 7 (formerly § 11) of the Constitution, general state laws will prevail over a city's ordinances if those ordinances

---

or to construct and use, poles, wires, conduits, and appurtenances for transmitting and distributing electricity for all purposes, or to use, or to lay and use, pipes and appurtenances for transmitting and distributing gas or industrial gas for all purposes, or to use, or to lay and use, pipes and appurtenances for transmitting and distributing oil or products thereof for all purposes, or to lay and use pipes, ditches, flumes, conduits, and appurtenances for transmitting and distributing water for all purposes, under, along, across, or upon the public streets, ways, alleys, and places within the municipality, upon the terms and conditions provided in this chapter."

[6] Section 6205 states: "This chapter [The Franchise Act of 1937, chapter 2 of division 3 of the Public Utilities Code] does not apply to any municipality having a freeholders' charter adopted and ratified under the Constitution and having in such charter provisions for the issuance of franchises by the municipality, but nothing contained in this chapter shall restrict the right of any such chartered municipality to avail itself of the provisions of this chapter wherever it may lawfully do so. The provisions of this chapter relating to the payment of a percentage of gross receipts shall not be construed as a declaration of legislative judgment as to the proper compensation to be paid a chartered municipality for the right to exercise franchise privileges therein."

are in conflict with the general laws. Conflict exists if an ordinance contradicts or duplicates the general laws or if the intent and purpose of the general laws is to occupy the field of the legislation to the exclusion of municipal regulation. This "intent to preempt" rule applies even if the subject being regulated is a municipal affair. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290-291 [219 Cal.Rptr. 467, 707 P.2d 840]; *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 707-708 [209 Cal.Rptr. 682, 693 P.2d 261].)

■ However, "Article XI, section 5, of the California Constitution allows charter cities . . . plenary power in making and enforcing ordinances and regulations with respect to municipal affairs. Charter city ordinances which govern municipal affairs, if they are adopted pursuant to the city's charter and if they are not proscribed by the state or federal Constitutions, supersede the general laws of the state with which they are inconsistent. [Citations.] In matters which are of statewide concern, charter cities like all other cities are subject to the general state laws. [Citations.]" (*People* v. *Stone* (1987) 190 Cal.App.3d Supp. 1, 9 [236 Cal.Rptr. 140].) Thus, under article XI, section 5 of the Constitution, a chartered city gains relief *with respect to its municipal affairs* from the "conflict with general laws" provision in article XI, section 7. (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d at p. 61.)

■ Because article XI of the Constitution does not define "municipal affair," the courts must, under the facts of each case, decide whether the subject matter at issue in that case is a municipal affair or a matter of statewide concern. While the courts will "give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation," the mere fact that the Legislature has indeed attempted to occupy the field will not by itself lead a court to conclude that a subject is a matter of statewide concern. (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d at p. 63.) "[T]he Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern." (*Ibid.*, fn. omitted.)

"Except in certain situations where the nature of the utility service demonstrates that it is a matter of statewide concern,[60] the granting of franchises for the operation of utility structures on public streets has been regarded as

---

"[60] See Pacific Tel. & Tel. Co. v. City & County of San Francisco, 51 Cal.2d 766, 336 P.2d 514 (1959), holding that telephone services are no longer a 'municipal affair,' as they had been held to be in 1911 in Sunset Tel. & Tel. Co. v. City of Pasadena, 161 Cal. 265, 118 Pac. 796 (1911), but were now a matter of statewide concern in the light of technological, social and economic changes in the interim period."

a municipal affair with respect to which freeholders' charter cities may exercise home-rule powers independent of state law.[61]" (5 Cal. Law Revision Com. Rep. (Jan. 1963) p. 188.) ▮▮▮ Plaintiff argues that the City should be bound by the fee schedule of the Broughton Act and the Franchise Act of 1937 because oil pipeline franchises are a matter of statewide concern; the City argues it should not be bound by those legislative acts because oil pipeline franchises are a municipal affair.

The California Law Revision Commission Report, from which we quote above, sheds some light on this issue. It says that "Statutory provisions occasionally recognize [that the granting of franchises to public utilities is a municipal affair unless the nature of the utility service demonstrates otherwise] by expressly authorizing statutory franchise-granting procedures to be employed by charter cities *as an alternative to other procedures authorized by city charter*." (5 Cal. Law Revision Com. Rep., *supra,* p. 188, fn. omitted, italics added.) Such an express authorization for alternative procedures is found in section 6205 of the Franchise Act of 1937. As the California Law Revision Commission Report states, the Franchise Act of 1937 "is expressly declared to be an alternative procedure to that prescribed by the Broughton Act or by any applicable provisions of a freeholders' charter.[58]" (*Id.* at pp. 187-188.) The City thus has its choice to use its own franchise-granting procedures or those found in the Franchise Act of 1937 or in the Broughton Act.

▮▮ ▮▮ ▮▮ ▮▮ Thus, by enacting section 6205, the Legislature appears to have expressly stated its opinion that granting oil, gas, water and electric utility franchises is a municipal affair which a chartered city may choose to provide for in its charter and ordinances.[7] Of course, as noted above, it is for the courts and not the Legislature to determine what is a municipal affair. However even if we, after lengthy analysis, were to determine that the nature of plaintiff's business in fact makes it a matter of statewide concern, we would still have to reverse the judgment because such a determination would simply mean that the City's ordinances relating to franchising of oil pipelines must not conflict with general law. (Cal. Const., art. XI, § 7.) Here, the relevant general law expressly allows chartered cities to use either their own franchise-granting provisions or those found in the

"[61] City of San Diego v. Southern Cal. Tel. Co., 92 Cal.App.2d 793, 208 P.2d 27 (1949); City of San Diego v. Kerckhoff, 49 Cal.App. 473, 193 Pac. 801 (1920). See also, cases cited in note 60 *supra*."

"[58] Cal. Pub. Util. Code §§ 6204, 6205."

[7] If a city's charter and ordinances do not fully provide procedures for granting these franchises, then the state's general laws (Broughton Act and Franchise Act of 1937) will apply to the extent they do not conflict with the municipal provisions. (*City of San Diego* v. *Kerckhoff* (1920) 49 Cal.App. 473, 478, 479, 480 [193 P. 801].)

Franchise Act of 1937 and the relevant general law also expressly states that the provisions of the Franchise Act of 1937 relating to the compensation a franchisee should pay "shall not be construed as a declaration of legislative judgment as to the proper compensation to be paid a chartered municipality for the right to exercise franchise privileges therein." (§ 6205.) Therefore, whether we determine that the nature of plaintiff's business makes it a municipal affair, (such that under art. XI, § 5 of the Cal. Const. the City may use its own franchise-granting procedures), or a matter of statewide concern, (in which case § 6205 of the Franchise Act allows the City to use its own franchise-granting procedures), the result is the same: the City is within its rights in applying its charter provisions and ordinances when granting plaintiff the right to use its property.[8]

## DISPOSITION

The judgment is reversed. Costs on appeal to defendant, the City of Long Beach.

Klein, P. J., and Luros, J.,* concurred.

A petition for a rehearing was denied October 13, 1988, and respondent's petition for review by the Supreme Court was denied December 1, 1988.

---

[8]The Public Utilities Commission, the very regulatory body which the Legislature has chosen to oversee privately owned public utilities, has itself stated that chartered cities are not bound by the fee provisions in the Broughton Act (§ 6006) and the Franchise Act of 1937 (§ 6231), the same provisions which plaintiff contends must be used by the City in setting fees for plaintiff. (*San Diego Gas & Electric Company* (1972) 73 Cal.P.U.C. 623, 627.) In its decision, the commission did not specifically discuss why chartered cities are not bound by these general laws. However, the commission did recognize that the rate which the chartered city of San Diego sought to charge San Diego Gas & Electric (3 percent of the utility's gross receipts) was substantially higher than the fees provided for in the Broughton Act and the Franchise Act of 1937 and substantially higher than those paid by the utility to *nonchartered* cities. Nonetheless, the commission impliedly ruled that San Diego was entitled to charge that high rate (*id.* at pp. 624, 626), concluding that the utility could pass the franchise increase on to the residents of the City of San Diego as a surcharge without also surcharging its customers in other cities which have lower franchise fees (*id.* at pp. 627-632).

* Assigned by the Chairperson of the Judicial Council.