[No. B217790. Second Dist., Div. Two. Sept. 22, 2010.]

CITY OF LOS ANGELES, Plaintiff, Cross-defendant and Respondent, v. TESORO REFINING AND MARKETING COMPANY, Defendant, Cross-complainant and Appellant.

COUNSEL

Munger, Tolles & Olson, Henry Weissmann and Manuel F. Cachan for Defendant, Cross-complainant and Appellant.

Richard M. Brown; Carmen A. Trutanich, City Attorney, and Dirk P. Broersma, Deputy City Attorney, for Plaintiff, Cross-defendant and Respondent.

Frank R. Lindh, Helen W. Yee and Carrie G. Pratt for California Public Utilities Commission as Amicus Curiae.

OPINION

ASHMANN-GERST, J.—By way of this appeal, Tesoro Refining and Marketing Company (Tesoro) challenges: (1) the grant of summary judgment in favor of the City of Los Angeles (Los Angeles) on its complaint requesting a declaration that it has the exclusive right to sell power for use within its borders; and (2) the denial of Tesoro's motion for summary judgment on its cross-complaint seeking a declaration that it may purchase power for use in Los Angeles from Southern California Edison (Edison). We reverse the summary judgment entered in favor of Los Angeles and order the trial court to grant the motion for summary judgment filed by Tesoro.

### FACTS

Tesoro owns a refinery that straddles the border between Los Angeles and the City of Carson (Carson). Most of the refinery is powered with electricity that Tesoro purchases from the Los Angeles Department of Water and Power (LADWP). A small fraction of the refinery outside Los Angeles is powered with electricity purchased from Edison, a private utility company located in and servicing Carson. Tesoro desires to modify its electrical system infrastructure and power the entire facility with electricity purchased solely from Edison.

Los Angeles sued for declaratory relief establishing that as a charter city, the California Constitution gives it the exclusive right to provide electric service to its inhabitants. Subsequently, the Public Utilities Commission (PUC) issued Decision No. 08-06-030 on June 27, 2008 (PUC decision), and ordered Edison to provide the refinery with its full requirement for electricity if requested by Tesoro. Tesoro filed a cross-complaint for declaratory relief establishing that, consistent with the PUC decision, Tesoro may purchase electricity from Edison and use it in the portion of the refinery located in Los Angeles. The parties filed cross-motions for summary judgment.

The trial court ruled against Tesoro and entered judgment containing the following declaration: "[Los Angeles] has the exclusive right to furnish

electricity within [Los Angeles] . . . , and . . . no utility other than [Los Angeles] may furnish electricity for use or consumption within that portion of the Tesoro refinery situated within [Los Angeles] without consent of [Los Angeles]."

This timely appeal followed.

The PUC requested the opportunity to file an amicus curiae brief in support of Tesoro's position. We granted that request and permitted Los Angeles to respond.

## DISCUSSION

Summary judgment is reviewed de novo. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 [67 Cal.Rptr.2d 483].) Thus, we take a fresh look at the issues presented to the trial court.

As a preliminary matter, we must examine the judgment in order to help frame the issue. On its face, the judgment purports to prohibit any utility other than Los Angeles from furnishing power for use within its borders. But Edison was not a party to the action, so the judgment is not binding on Edison and does not bar it from complying with the PUC decision.[1] Furthermore, the judgment does not expressly prohibit Tesoro from purchasing power from Edison at a delivery point in Carson for use in the portion of the refinery located within the borders of Los Angeles. At best, that prohibition is implied. In its briefs, however, Tesoro accepts the implied prohibition as though it were express. Further, Tesoro tacitly accepts that the judgment prevents Edison from complying with the PUC decision. For purposes of this appeal, we will not second-guess Tesoro's assumptions. Thus, the issue is: Does the California Constitution[2] or Los Angeles Charter (charter) prevent Tesoro from purchasing and Edison from selling power for use in Los Angeles?

### I. *The Constitution.*

■ Los Angeles is a municipal corporation with the constitutional authority to "establish, purchase, and operate public works to furnish its inhabitants with light, water, power, heat, transportation, or means of communication." (Const., art. XI, § 9, subd. (a).) A private utility company may "establish and operate works for supplying those services upon conditions and under regulations that the city may prescribe under its organic law." (Const., art. XI,

---

[1] Neither party explains why Edison was not joined as a necessary party.
[2] All further references to the Constitution are to the California Constitution.

§ 9, subd. (b).) The charter does not permit a private utility company such as Edison to establish and operate works in Los Angeles for supplying power to its inhabitants absent a franchise. (Charter, §§ 101, 390, 672; *Southern Pacific Pipe Lines, Inc. v. City of Long Beach* (1988) 204 Cal.App.3d 660, 666 [251 Cal.Rptr. 411] ["A franchise is a privilege conferred upon an individual or a corporation for use of a sovereign body's property."].)

Tesoro reads the Constitution narrowly to mean that Los Angeles has constitutional authority over works in public spaces for the delivery of utility service. Los Angeles takes a broader view, arguing that it has the constitutional right to sell all power consumed within its borders. To resolve this dispute, we must interpret article XI, section 9 of the Constitution. "In construing constitutional provisions, the intent of the enacting body is the paramount consideration. [Citation.] To determine that intent, courts first look to the language of the constitutional text, giving the words their ordinary meaning. [Citations.]" (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 91 [40 Cal.Rptr.2d 839, 893 P.2d 1160].) We need not look further if the meaning is clear and unambiguous. (*Bowens v. Superior Court* (1991) 1 Cal.4th 36, 48 [2 Cal.Rptr.2d 376, 820 P.2d 600].)

*Pac. Tel. & Tel. Co. v. City of Los Angeles* (1955) 44 Cal.2d 272 [282 P.2d 36] (*PacTel*) is controlling. In *PacTel*, a private utility company (Pacific) provided telephone and telegraph service to Los Angeles. Pacific applied to Los Angeles for a franchise to use the streets and other public places within the city's borders as they existed in 1905. Territory added to Los Angeles after 1905 was not included in the application because Pacific claimed that it held a franchise from the state pursuant to Public Utilities Code former section 536.[3] The application was refused, so Pacific sued to obtain a declaration of its rights. (*PacTel, supra*, 44 Cal.2d at p. 276.)

The court averred that "Pacific may be required to obtain a municipal franchise to use the streets and other public places for the construction and maintenance of telephone lines within the city boundaries as they existed in 1905. The city contends that it may also require Pacific to obtain a municipal franchise to conduct 'a telephone business' before Pacific can operate a telephone system anywhere in the city. It seems clear that the city does not have the power to grant such a franchise, as distinguished from one to use the streets and other public places for the construction and maintenance of

---

[3] All further statutory references are to the Public Utilities Code unless otherwise indicated.
The successor to former section 536 is section 7901, which provides: "Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this State, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters."

telephone lines and that Pacific need not get permission from the city to engage in the telephone business." (*PacTel, supra,* 44 Cal.2d at p. 279.)

In support, the court noted that the "authority to grant a franchise to engage in the telephone business resides in the state, and the city is without power to require a telephone company to obtain such a franchise unless the right to do so has been delegated to it by the state. [Citations.] The business of supplying the people with telephone service is not a municipal affair; it is a matter of statewide concern. [Citations.] Therefore, any delegation from the state to the city of authority to control the right of Pacific to do a telephone business should be clearly expressed, and any doubt as to whether there has been such a delegation must be resolved in favor of the state. [Citations.]" (*PacTel, supra,* 44 Cal.2d at pp. 279–280.) The court was unable to find such a delegation in any constitutional or statutory provision. In contrast, the court concluded that the Legislature used its authority under former section 23 of article XII of the Constitution[4] to vest the PUC with exclusive jurisdiction under sections 701–853, 1001, 1002 and 2101 to supervise and regulate public utilities, prescribe the character and quality of their service, and fix rates for that service. (*PacTel, supra,* 44 Cal.2d at p. 280.) It was noted that former section 23 of article XII of the Constitution provided that it shall not affect " 'such powers of control over public utilities as relate to the making and enforcement of local, police, sanitary and other regulations, other than the fixing of rates, vested in any city . . .'; and it is further provided 'that this section shall not affect the right of any city . . . to grant franchises for public utilities upon the terms and conditions and in the manner prescribed by law.' " (*PacTel, supra,* 44 Cal.2d at pp. 280–281.) The court, however, held that the "first proviso quoted above relates solely to local regulations such as any municipality may exercise under its police powers. [Citations.] The second proviso does not confer any rights; it merely reserves to a city such power over franchises as may have been vested in it." (*Id.* at p. 281.)

Los Angeles argued that former section 19 of article XI of the Constitution[5] "in effect declares that the granting of a franchise to engage in the telephone business is a municipal affair and that, therefore, the right to grant such a franchise is reserved to the city." (*PacTel, supra,* 44 Cal.2d at p. 281.) The *PacTel* court rejected the argument on the following grounds: "There is nothing in this provision which is inconsistent with the established rule that the right to exist as a telephone corporation and conduct a telephone business is a matter of statewide concern and not a municipal affair. The statement printed on the ballot in support of the amendment describes its scope, as

---

[4] This section was effectively replaced by sections 3 to 6 and 8 of article XII of the Constitution.

[5] This former section of the Constitution was replaced by section 9, article XI of the Constitution.

follows: 'The right of individuals or private corporations to operate these utilities will not be taken away, but such operation and the manner of using the public streets must be in accordance with such regulations as the cities may prescribe in their charters.' The section did not give a city the power to grant or withhold the right of a telephone company to do business, but, on the contrary, it recognized the existence of that right and merely authorized the city to regulate the manner in which the company might use the public streets." (*Ibid.*)

Finally, the court considered "the franchise fee which may be charged by the city for the use of the streets and other public places within the 1905 boundaries of the city." (*PacTel, supra*, 44 Cal.2d at p. 283.) According to the court: "The judgment correctly declares that the city may not require Pacific to pay for such franchise any compensation based on revenues attributable to plant or investment located on private property inside the 1905 boundaries of the city or on private or public property outside the franchise area. The fee which a city may exact for a franchise to use streets and other public property for the construction and maintenance of telephone lines and equipment is not a tax upon the property of the utility or a license charge for the privilege of operating its business; it is compensation for the privilege of using the streets and other public property within the territory covered by the franchise. [Citations.] The city has no power, either directly or indirectly, to exact a franchise fee from Pacific for the use of property belonging to it which is not located upon streets or other public places within the area covered by the franchise. [Citations.]" (*Ibid.*)

■ Nothing in section 9 of article XI of the Constitution conveys an intention to grant a municipal corporation a right to sell all power consumed within its borders. The plain meaning of the words is limited to the right of a municipal corporation to control the use of its property for utility service. Our reading is dictated by *PacTel*. It held that while a city can grant or withhold a franchise for the use of public property within its borders, it does not have the authority to determine when or where a company can engage in a utility business. In addition, *PacTel* held that if there is any doubt as to whether the state endowed a city with the power to decide who can and cannot engage in a utility business, that doubt must be resolved in favor of the state. Thus, even if the constitutional language at issue was ambiguous instead of clear, Los Angeles's analysis would fall well short of persuasive.

II. *The charter.*

■ Under charter section 390(a), Los Angeles has the power to grant franchises for the operation of plants or works necessary to furnish utilities to its inhabitants. (Charter, § 390(a).) The charter further provides that the

LADWP commissioners shall have the possession, management and control of "[a]ll the electric energy rights, lands, rights-of-way, sites, facilities and property used for the generation, transportation, distribution and delivery of power for the benefit of the City, its inhabitants and its customers." (Charter, § 672(b).) Assuming without deciding that the charter purports to give Los Angeles the right to provide all power consumed within its borders, we must determine whether the charter is preempted.

■ To resolve this issue, our first task is to sort out the jurisdiction of Los Angeles and the PUC. The PUC has limited or no jurisdiction over municipal utilities. (*County of Inyo v. Public Utilities Com.* (1980) 26 Cal.3d 154, 166 [161 Cal.Rptr. 172, 604 P.2d 566].) On the other hand, private utility companies are subject to control by the Legislature, and the PUC has a broad grant of authority under the Constitution and the Public Utilities Code to regulate them. (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 905 [160 Cal.Rptr. 124, 603 P.2d 41]; Const., art. XII, §§ 1–6; Pub. Util. Code, § 701.) Moreover, a city may not regulate matters over which the Legislature grants regulatory power to the PUC, except, inter alia, that a city retains "power over public utilities relating to the making and enforcement of police, sanitary, and other regulations concerning municipal affairs pursuant to a city charter." (Const., art. XII, § 8.)

■ By statutory proviso, it is established that "[t]he [PUC] may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." (§ 701.) The PUC's authority to establish rules for itself and utility companies has been liberally construed by the appellate courts. (*Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 792 [3 Cal.Rptr.3d 703, 74 P.3d 795].) Thus, the PUC has been given broad authority to regulate Edison as a private utility company, including the authority to direct Edison to supply the refinery with all its demand for power. The charter stands in direct conflict.

■ The PUC has "paramount jurisdiction in cases where it has exercised its authority, and its authority is pitted against that of a local government involving a matter of statewide concern." (*Orange County Air Pollution Control Dist. v. Public Util. Com.* (1971) 4 Cal.3d 945, 951 [95 Cal.Rptr. 17, 484 P.2d 1361].) "Any fair, reasonable and substantial doubt whether a matter is a municipal affair or broader state concern must be resolved in favor of the

legislative authority of the state. [Citations.]" (*Cox Cable San Diego, Inc. v. City of San Diego* (1987) 188 Cal.App.3d 952, 962 [233 Cal.Rptr. 735].) Los Angeles contends that the charter trumps the PUC decision because the use of power within Los Angeles is a municipal affair. Tesoro disagrees.

In our view, *PacTel* once again controls. It held that supplying telephone service to California residents is a matter of statewide concern. No less can be true of any other utility, especially power. Moreover, it has been held that "an order of the PUC controls over a local ordinance where the two conflict. [Citation.]" (*Rainbow Disposal Co. v. Escondido Mobilehome Rent Review Bd.* (1998) 64 Cal.App.4th 1159, 1168–1169 [75 Cal.Rptr.2d 746].) If there was any doubt, of course, we would be bound by precedent to decide in favor of the authority of the state and the PUC.

*Los Angeles G. & E. Corp. v. Los Angeles* (1922) 188 Cal. 307 [205 P. 125] (*LAGEC*) is cited by Los Angeles to convince us otherwise, but *LAGEC* is not on point. It involved a taxpayer suit to enjoin Los Angeles from selling its electricity at wholesale. On appeal, the taxpayer claimed that Los Angeles was violating a provision of the Constitution prohibiting the Legislature from giving credit or gifts. The court disagreed because the "sale and distribution of electrical energy manufactured by a city is a municipal affair and one over which the [L]egislature of the state has no control." (*LAGEC, supra,* 188 Cal. at pp. 317–318.) The issue at bar is the purchase of power by Tesoro and the sale of that power by Edison, a PUC regulated entity, and the price of LADWP power is not implicated by Tesoro's appeal.

III. *Conclusion.*

We conclude that the trial court was required to enter summary judgment in favor of Tesoro because neither the Constitution nor the charter prohibits Tesoro from buying power from Edison in Carson, transporting that power over the refinery's internal wiring, and using that power within Los Angeles. In addition, we conclude that the trial court's ruling transgressed section 1759, subdivision (a). The statute provides: "No court of this state, except the Supreme Court and the [C]ourt of [A]ppeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the [PUC] or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the [PUC] in the performance of its official duties, as provided by law and the rules of court." (§ 1759, subd. (a).)

All other issues are moot.

## DISPOSITION

The judgment in favor of Los Angeles on its complaint is reversed and the trial court is directed to grant Tesoro's motion for summary judgment on its cross-complaint. Tesoro is entitled to its costs on appeal.

Doi Todd, Acting P. J., and Chavez, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 12, 2011, S187780. Kennard, J., did not participate therein.