**PACIFIC BELL TELEPHONE COMPANY, a California corporation doing business as AT & T California, Plaintiff and Petitioner**

v.

**THE CITY OF WALNUT CREEK and The City Council of the City of Walnut Creek, Defendants and Respondents.**

No. C–05–4723 MMC.

United States District Court,
N.D. California.

April 13, 2006.

Robert S. Metzger, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, Ronald E. Van Buskirk, Christopher R. Ball, Pillsbury Winthrop Shaw Pittman LLP, Bobby C. Lawyer, SBC West Legal Department, San Francisco, CA, for Plaintiff and Petitioner.

Paul Valle–Riestra, Senior Assistant City Attorney, Walnut Creek, CA, Kirk Edward Trost, Miller, Owen & Trost, Sacramento, CA, for Defendants and Respondents.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND/OR TO ABSTAIN

CHESNEY, District Judge.

Before the Court is the motion filed February 27, 2006 by defendants City of Walnut Creek and the City Council of the City of Walnut Creek (jointly, "City") seeking dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and/or abstention. Plaintiff Pacific Bell Telephone Company, doing business as AT & T California ("AT & T") has filed opposition to the motion; the City has filed a reply. Having considered the papers filed in support of and in opposition to the motion, and the arguments of counsel at the April 7, 2006 hearing, the Court rules as follows.

### BACKGROUND

In October 2004, AT & T announced plans to implement a project, titled "Project Lightspeed," to upgrade its telecommunications network. (*See* Compl. ¶ 20.) AT & T alleges the upgrades under Project Lightspeed will allow it to provide new and improved services to its customers, including "Internet Protocol ('IP')-based video services." (*See id.* ¶¶ 1, 21.)

On June 7, 2005, AT & T submitted to the City an application for an encroachment permit to perform upgrades to its network under Project Lightspeed. (*See id.* ¶ 24.) In particular, AT & T sought

permission to perform "line conditioning" work to "remove certain bridge taps on existing aerial twisted-pair copper lines along a one-block stretch of Walnut Avenue." (*See id.* ¶¶ 23–24.) On June 21, 2005, the City granted Permit No. EP05–0434 ("Permit") to AT & T, on the condition ("Franchise Condition") that: "[b]y accepting th[e] permit, [AT & T] agrees on behalf of itself and its affiliates that it will not provide video programming ... over facilities located with [sic] the City's rights-of-way to subscribers within the City without first obtaining a cable franchise or an open video system franchise from the City." (*See id.* ¶ 26.)

On July 1, 2005, AT & T appealed the Franchise Condition to the City Council. (*See id.* ¶ 31.) On October 18, 2005, AT & T's appeal was denied. (*See id.* ¶ 34.)

AT & T alleges the City has informed AT & T that the Franchise Condition will "be attached to any and all permits for any Project Lightspeed-related work as determined by the City, in its discretion, on a case-by-case basis." (*See id.* ¶ 33.) As a result, AT & T alleges, AT & T has halted its upgrade activities that require permits in Walnut Creek. (*See id.*)

On November 17, 2005, AT & T filed the instant action, alleging the Franchise Condition violates federal and state law. In its first claim for relief, AT & T seeks a declaratory judgment that the Franchise Condition is preempted by the federal Telecommunications Act of 1996 ("TCA"), and, in particular, by 47 U.S.C. § 253. (*See* Compl. ¶¶ 36–43.) Section 253 provides: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." *See* 47 U.S.C. § 253. AT & T alleges that the Franchise Condition either prohibits, or has the effect of prohibiting, the provision of the

telecommunications services AT & T intends to provide. (*See* Compl. ¶ 39.)

In its second claim for relief, AT & T seeks a declaratory judgment that the Franchise Condition is preempted by the federal Communications Act of 1934 ("Cable Act"), and in particular by 47 U.S.C. § 541(b)(1). (*See* Compl. ¶¶ 1(d), 44–55.) Under 47 U.S.C. § 541(b)(1), subject to specified exceptions, "a cable operator may not provide cable service without a franchise." *See* 47 U.S.C. § 541(b)(1). AT & T contends that, under the Cable Act, cable franchise requirements apply only to cable operators that provide cable services over cable systems; AT & T further contends it is not a cable operator within the meaning of the Cable Act and that, consequently, it is not required to obtain a cable franchise prior to offering video services under Project Lightspeed. (*See* Compl. ¶¶ 47–50.)

In its third claim for relief, AT & T alleges the State of California has granted AT & T a franchise, pursuant to § 7901 of the California Public Utilities Code, authorizing AT & T to access the public rights of way ("PROWs") for the purpose of installing and operating its telephone lines. (*See* Compl. ¶ 57.) AT & T seeks a declaratory judgment that the above-referenced franchise from the state authorizes AT & T to use its telephone lines to provide any form of electronic communication, including video, without obtaining an additional franchise from the City. (*See id.* ¶¶ 56–63.)

In its fourth claim for relief, AT & T alleges the City has deprived AT & T of its property rights in its § 7901 franchise, without due process, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. (*See id.* ¶¶ 64–67.)

In its fifth claim for relief, AT & T alleges the City's imposition of the Franchise Condition has unlawfully interfered

with AT & T's rights under the First Amendment to the United States Constitution. (*See id.* ¶¶ 68–72.)

In its sixth claim for relief, AT & T asserts a claim for relief pursuant to 42 U.S.C. § 1983. (*See* Compl. ¶¶ 73–77.) AT & T alleges "the City's actions violate [AT & T's] rights, privileges and immunities under the Due Process Clause and the Contracts Clause of the United States Constitution, the TCA (47 U.S.C. § 253), the Cable Act and FCC rules, regulations and order promulgated pursuant thereto." (*See* Compl. ¶ 76.)

In its seventh claim for relief, AT & T seeks a declaratory judgment that it "has the right to access the PROWs to install, upgrade and maintain its facilities, free from the City's Franchise Condition and any requirement for a cable franchise agreement." (*See* Compl. ¶¶ 78–81.)

In its eighth claim for relief, AT & T seeks a declaratory judgment that § 53066(e) of the California Government Code "does not apply to [AT & T's] telephone lines and does not require [AT & T] to obtain a franchise in order to provide video services via its telephone lines." (*See* Compl. ¶¶ 82–92.) Section 53066(e) provides: "No person may commence the construction of a cable television system without a franchise or license granted by the city, county, or city and county in which the cable television system will operate." *See* Cal. Gov.Code § 53066(e). AT & T further seeks a declaratory judgment that the Franchise Condition imposes "new requirements inconsistent with a state utility franchise" pursuant to § 7901 and "violate[s] both the federal and state constitutional prohibitions on impairment of contracts." (*See* Compl. ¶ 86.)

In its ninth claim for relief, AT & T seeks a writ of mandate, pursuant to §§ 1085 and 1094.5 of the California Code of Civil Procedure, to set aside the City's imposition of the Franchise Condition. (*See* Compl. ¶¶ 93–104.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. *See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). Material that is properly submitted as part of the complaint, however, may be considered. *See id.* Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998). Finally, the Court may consider matters that are subject to judicial notice. *See Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. *See NL Industries, Inc.*

v. *Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. *See Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992).

## DISCUSSION

### 1. First Claim—TCA

 In its first claim for relief, AT & T seeks a declaratory judgment that the Franchise Condition is preempted by the TCA, and in particular by 47 U.S.C. § 253. (*See* Compl. ¶¶ 36–43.) As noted, section 253 provides: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." *See* 47 U.S.C. § 253(a). "Section 253(a) preempts regulations that not only prohibit outright the ability of any entity to provide telecommunications services, but also those that may have the effect of prohibiting the provision of such services." *See City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1175 (9th Cir. 2001) (internal quotations and citation omitted). AT & T alleges that the Franchise Condition prohibits, or has the effect of prohibiting, the provision of the telecommunications services AT & T intends to provide. (*See* Compl. ¶ 39.)

Defendants argue that the first claim for relief is subject to dismissal because the Franchise Condition only limits AT & T's ability to provide video programming and does not regulate AT & T's provision of telecommunications services. In its opposition, AT & T states it "does not assert a § 253 violation on the grounds that the City's franchise condition may prohibit the provision of IP-video services." (*See* Opp. at 5.) Rather, according to AT & T, "because the IP-video services will be integrated with existing telecommunications services and transported along the same network, imposing the franchise condition will not only prohibit the provision of video services, but also 'may have the effect' of prohibiting the provision of voice and other communications services that would be available upon the facilities upgrade." (*See id.*) AT & T further states that it "has not asserted in this case (or anywhere else) that IP video services are 'telecommunications service[.]' " (*See id.* at 7.)

AT & T fails to adequately allege how the Franchise Condition may affect its provision of telecommunication services. AT & T alleges the City granted the Permit allowing AT & T to perform the requested line conditioning work, and that AT & T completed that work. (*See* Compl. ¶¶ 25– 26.) The Franchise Condition precludes AT & T only from providing "video programming ... without first obtaining a cable franchise or an open video system franchise from the City." (*See id.* ¶ 26.) As noted, AT & T concedes video programming is not "telecommunications service" within the meaning of the TCA. Although AT & T alleges that AT & T "has halted any of its upgrade activities which require permits in Walnut Creek," (*see id.* ¶ 33), the Franchise Condition does not require AT & T to do so. There is no allegation that the City has denied AT & T any requested permit for the upgrading of AT & T's telecommunications facilities; indeed, the one permit AT & T alleges it sought was granted.

Accordingly, defendants' motion to dismiss the first claim for relief will be GRANTED and such claim will be DISMISSED with leave to amend.

## 2. Second Claim—Cable Act

In its second claim for relief, AT & T seeks a declaratory judgment that the Franchise Condition is preempted by the Cable Act. (*See* Compl. ¶¶ 44–55.) Defendants move to dismiss AT & T's second claim for relief on the ground that AT & T's proposed video programming is a cable service and that the Cable Act specifically authorizes the franchising of cable services. Defendants further argue that even if AT & T's video programming is not a cable service, the Cable Act does not preclude local regulation of non-cable video services.

### a. Cable Service

Subject to exceptions that no party contends are applicable in the instant case, the Cable Act states that "a cable operator may not provide cable service without a franchise." *See* 47 U.S.C. § 541(b)(1). A "cable operator" is defined as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system[.]" *See* 47 U.S.C. § 522(5). "Cable service" is defined as:

> (A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming service, and
> (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service.

*See* 47 U.S.C. § 522(6).

Defendants argue, relying on the allegations of paragraph 49 of the complaint, that AT & T's proposed video programming constitutes "cable service" within the meaning of § 522(6). AT & T expressly alleges, however, that its "video service is a two-way interactive service," (*see* Compl. ¶ 49), and that its "network is a two-way switched network that is designed to transmit packetized data, including voice and video indifferently, in a call-based or session-based format controlled by the user," (*see id.* ¶ 47). The Court cannot conclude from such allegations, as a matter of law, that AT & T's proposed video programming constitutes "cable service" within the meaning of the Cable Act. Whether AT & T's video programming in fact is a two-way interactive service is an evidentiary matter to be addressed in future proceedings.

Defendants additionally argue that the structure of the Cable Act supports a finding that AT & T is engaging in cable service, within the meaning of the Cable Act, by providing video programming to its subscribers. As noted by defendants, the Cable Act provides that when a "common carrier is providing video programming to its subscribers in any manner other than" through radio-based systems, common carriage of video traffic, or an open video system, it is subject to the requirements of Subchapter V–A of the Cable Act. *See* 47 U.S.C. § 571(a)(3). Subchapter V–A is titled "Cable Communications" and includes the statutory requirement that cable operators may not provide cable service without a franchise. As defendants note, § 571(a)(3), on its face, can be read to impose cable franchising requirements on common carriers who provide "video programming to [their] subscribers in any manner" other than through radio-based systems, common carriage of video traffic, or an open video system.

AT & T does not contend it is providing its video programming by means of a radio-based system, common carriage of video traffic, or an open video system. Rather, AT & T argues that § 571(a)(3) requires AT & T to comply with cable franchising requirements only if it is a cable operator providing cable service.

As noted, a "cable operator" provides "cable service over a cable system" or otherwise controls a cable system. *See* 47 U.S.C. § 522(5). The definition of "cable system" includes a facility of a common carrier "to the extent such facility is used in the transmission of video programming directly to subscribers, unless the extent of such use is solely to provide interactive on-demand services." *See* 47 U.S.C. § 522(7)(C). By excluding from the definition of "cable system" common carrier facilities that provide only interactive on-demand services, § 522(7)(C) arguably distinguishes interactive on-demand services from "cable service," which requires "one-way transmission" of video programming. *See* 47 U.S.C. § 522(6)(A). By exempting common carriers' video programming facilities from the definition of "cable system" where such facilities provide only interactive on-demand services, § 522(7)(C) arguably supports AT & T's contention that § 571(a)(3) imposes cable franchising requirements on common carriers only when they act as cable operators providing cable service.

The Court need not resolve this dispute, however, because, for the reasons set forth below, the Court agrees with defendants that even if the Cable Act does not require AT & T to obtain a cable franchise, it does not preclude local authorities from imposing such a requirement.

### b. Regulation of Non–Cable Video Services

■ Defendants argue that even if AT & T's video programming is not "cable service," the Cable Act does not preclude local regulation of non-cable video programming.

The Cable Act provides that "any provision of law of any State, political subdivision, or agency thereof . . . which is inconsistent with [the Cable Act] shall be deemed to be preempted and superseded." *See* 47 U.S.C. § 556(c). Defendants argue that "[t]he Cable Act does not even discuss the franchising of non-cable services, so local franchising of non-cable services is in no way inconsistent with the Cable Act." (*See* Motion at 15.)

■ In support thereof, defendants rely on *City of Dallas, Texas v. Federal Communications Commission,* 165 F.3d 341 (5th Cir.1999), in which the Fifth Circuit held the Cable Act does not preclude local governments from requiring "open video system" ("OVS") operators to obtain a franchise, *see id.* at 347–49, despite the Cable Act's express statement that the franchising requirements applicable to cable operators do not apply to OVS operators. *See id.* at 347 (citing 47 U.S.C. § 573(c)(1)(C)). The Fifth Circuit held that while § 541 "may have expressly recognized the power of localities to impose franchise requirements, it did not create that power, and elimination of [§ 541] for OVS operators does not eliminate local franchising authority." *See id.* at 348. Relying on the Supreme Court's opinion in *Gregory v. Ashcroft,* 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), the Fifth Circuit further noted that "if Congress intends to preempt a power traditionally exercised by a state or local government, 'it must make its intention to do so unmistakably clear in the language of the statute.'" *See id.* at 347–48 (quoting *Gregory,* 501 U.S. at 460, 111 S.Ct. 2395). Accordingly, the Fifth Circuit concluded, § 573(c)(1)(C) expressly exempts OVS operators from the federal requirement of a franchise, but does not preempt "the localities' freedom to impose franchise requirements as they so fit[.]" *See id.* at 348. *City of Dallas* thus stands for the proposition that the Cable Act does not preclude local governments from imposing franchising requirements on providers of video programming where such regulation is not expressly forbidden by the Cable Act. *See id.*

In an effort to distinguish *City of Dallas,* AT & T contends the City has no authority under California state law to impose franchise requirements on non-cable video programming. Such argument has no relevance, however, with respect to the second claim for relief, which seeks a declaration that the federal Cable Act precludes local authorities from imposing such requirements. AT & T points to no provision of the Cable Act that precludes local authorities from imposing franchise requirements for AT & T's video programming services. Although AT & T observes, in its opposition, that it is subject to regulation under the Cable Act as a multi-channel video programming distributor ("MVPD"), it points to no portion of the Cable Act that bars local authorities from imposing franchise requirements on MVPDs.

As AT & T has not demonstrated that local governments are precluded under the Cable Act from imposing franchise conditions on AT & T, its claim under the Cable Act is subject to dismissal. If AT & T is a cable operator, the Cable Act itself requires it to obtain a cable franchise. *See* 47 U.S.C. § 541(b)(1). If AT & T is not a cable operator, nothing in the Cable Act bars local authorities from imposing franchise requirements on AT & T's provision of non-cable video programming.

Accordingly, defendants' motion to dismiss the second claim for relief will be GRANTED, on the ground that even if AT & T's video programming is not "cable service" within the meaning of the Cable Act, the Cable Act does not preclude local regulation of non-cable video programming.

### 3. Third Claim—California Public Utilities Code § 7901

In its third claim for relief, AT & T seeks a declaratory judgment that § 7901 of the California Public Utilities Code authorizes it to transport video programming over its telephone lines without obtaining a separate franchise from the City. Defendants argue that the Court, under 28 U.S.C. § 1367(c)(1), should decline to exercise supplemental jurisdiction over AT & T's third claim for relief, on the ground such claim raises novel and complex issues of state law. *See* 28 U.S.C. § 1367(c)(1) (providing district court may decline to exercise supplemental jurisdiction over a claim that "raises a novel or complex issue of State law").

Section 7901 provides: "Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this State, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters." *See* Cal. Pub. Util.Code § 7901.

According to AT & T, the law is clear that § 7901 authorizes it to transport any type of signal over its telephone lines without obtaining a franchise from any local authority. AT & T points out that more than 50 years ago, the California Supreme Court rejected the contention that § 7901 grants telephone companies only the right to use its telephone lines for the transmission of "articulate speech," holding instead that § 7901 "authorizes telephone companies to construct their lines along public highways, [and] places no restriction upon what may be transmitted by means of electrical impulses over those lines." *See Pacific Telephone and Telegraph Co. v. City of Los Angeles,* 44 Cal.2d 272, 281–82,

282 P.2d 36 (1955) (affirming judgment entitling telephone company to use its lines "for transmitting telephone messages, telegraph messages, teletypewriter message, telephotographs, program services (including radio and television broadcasts) and any other communications services by means of the transmission of electrical impulses"). In the Supreme Court's analysis, "[i]f the state franchise granted to a telephone company were limited to the transmission of 'articulate speech,' the company would be required to obtain numerous local franchises in order to give its subscribers the benefit of the many and varied uses of telephone wires made possible by scientific development," a result that "would defeat the very purpose of section [7901], as it would interfere substantially with the ability of telephone companies to provide adequate communication service to the people of the state." *See id.* at 282, 282 P.2d 36.

■ As defendants point out, however, *Pacific Telephone* was decided long before the enaction, in 1989, of § 53066(e) of the California Government Code, which provides that "[n]o person may commence the construction of a cable television system without a franchise or license granted by the city, county, or city and county in which the cable television system will operate." *See* Cal. Gov.Code § 53066(e). By its plain language, § 53066(e) contains no exception for telephone companies or for anyone else. Moreover, although the law is settled that the rights granted by § 7901 are "vested rights" that "cannot be taken away by the state, even though the legislature should repeal the section, or by the people through a constitutional provision," *see County of Los Angeles v. Southern California Telephone Co.,* 32 Cal.2d 378, 385, 196 P.2d 773 (1948) (interpreting predecessor of § 7901), whether § 7901 in

fact grants any rights to telephone companies with respect to the provision of video programming presents a novel issue of law. No court has addressed whether § 7901 authorizes telephone companies to use telephone lines for provision of video programming services, or whether telephone companies are required to obtain a cable franchise pursuant to § 53066(e) before providing cable services.

Additional authority on which AT & T relies, *Williams Communications, LLC v. City of Riverside,* 114 Cal.App.4th 642, 8 Cal.Rptr.3d 96 (2004), does not resolve the matter. In *Williams,* the California Court of Appeal addressed whether California law invalidated a city's requirement that Williams, the plaintiff therein, pay a license fee to install fiber optic cable in the city's streets. *See id.* at 645–46, 8 Cal. Rptr.3d 96. There was evidence that such fiber optic network would provide "voice, data, video, and internet transmissions services," the "content of which [was] neither controlled nor manipulated by Williams." *See id.* at 649, 651, 8 Cal.Rptr.3d 96. The court of appeal held the City could not impose its license fee because (a) Williams was a telephone company, (b) "[t]he fact that other data is transmitted over the telephone lines [did] not deprive Williams of the protection afforded by section 7901," and (c) § 50030 of the California Government Code limits the imposition of permit fees for the installation of telecommunications facilities. *See id.* at 654, 8 Cal.Rptr.3d 96. Although the *Williams* court expressly noted that § 53066 subjects cable television companies to local regulation and franchise agreements, it found no evidence that Williams was providing cable television services, and, consequently, did not opine as to whether telephone companies can be regulated under § 53066. *See id.* at 649 n. 3, 8 Cal.Rptr.3d 96.[1] Similarly,

---

1. The license imposed on Williams specifical-

ly provided that Williams could "not provide

because Williams had no control over the content of its video transmissions, the court had no reason to determine whether § 7901 grants telephone companies the right to act as content providers in the area of video programming.

AT & T's citation to two recently-decided Ninth Circuit cases likewise is unavailing. In *Sprint PCS Assets, L.L.C. v. City of La Canada Flintridge,* 435 F.3d 993 (9th Cir.2006), the Ninth Circuit held § 7901 bars local regulators from denying permits to telecommunications companies based on aesthetics. *See id.* at 998. Although the Ninth Circuit observed that the only substantive limitation imposed by the "plain text" of § 7901 is that telephone companies "not 'incommode the public use'" of the road, *see id.* at 997, the Ninth Circuit did not address whether telephone companies providing cable service may be regulated under § 53066, or, alternatively, whether § 7901 grants telephone companies the right to provide video programming services. *Qwest Corp. v. City of Surprise,* 434 F.3d 1176 (9th Cir.2006) addresses Arizona law and has no relevance with respect to how the interplay of §§ 7901 and 53066 should be interpreted.

■ The Court finds the question of whether § 53066 governs telephone companies who provide cable television service and/or whether § 7901 grants telephone companies the right to provide video programming services constitute "novel or complex issue[s] of state law." In exercis-

ing its discretion whether to assume supplemental jurisdiction over such a claim the Court must consider "economy, convenience, fairness, and comity." *See Executive Software North America, Inc. v. United States District Court for the Central District of California,* 24 F.3d 1545, 1557 (9th Cir.1994). Here, comity suggests that the issues should be resolved in the first instance by a state court, and, given the early stage of the litigation, considerations based on economy, convenience and fairness do not weigh in favor of retaining jurisdiction.[2] *See, e.g., Qwest Communications Corp. v. City of Berkeley,* 146 F.Supp.2d 1081, 1101 (N.D.Cal.2001) (declining to exercise supplemental jurisdiction over claim that §§ 7901, 7901.1 and § 50030 preempt local ordinance in light of "ambiguity and novelty" of state law questions).

Accordingly, the Court will decline to exercise supplemental jurisdiction over the third claim for relief, and will DISMISS that claim, without prejudice to AT & T's refiling it in state court.

### 4. Fourth Claim—Due Process

■ In its fourth claim for relief, AT & T seeks a declaration that the City has deprived AT & T of a vested and cognizable property interest without due process, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. (*See id.* ¶¶ 64–67.) In particular, AT & T contends the City's imposition of

---

cable television services without obtaining a franchise to do so." *See id.* at 649 n. 3. The legality of that particular provision was not addressed in *Williams.*

2. AT & T argues that the Court should retain jurisdiction because "both the sixth claim, alleging due process violations, and the eighth claim, alleging impairment of contracts, rely on AT & T's constitutionally protected state law rights under § 7901." (*See* Opp. at 25.) For the reasons set forth below, the Court will

abstain with respect to those federal constitutional claims, pursuant to the doctrine of *Pullman* abstention. AT & T further argues that "[t]he City's defense to the second claim, that it has an independent ground to regulate non-cable services, flies in the face of § 7901 in the case of a telephone corporation like AT & T." (*See id.*) As noted above, that argument is based entirely on state law and has no relevance with respect to the second claim that the Cable Act prohibits local regulation of AT & T's video programming.

the Franchise Condition unconstitutionally interferes with AT & T's rights under § 7901, which AT & T contends constitutes "a franchise to construct, upgrade and maintain its communication facilities in the PROW free from unreasonable and discriminatory conduct." (*See id.* ¶ 66.) Defendants move to dismiss the fourth claim for relief, for failure to state a claim and, in the alternative, request that the Court abstain, under the doctrine of *Pullman* abstention, from hearing it.

Defendants argue, relying on *Cox Communications PCS, L.P. v. City of San Marcos*, 204 F.Supp.2d 1272 (S.D.Cal. 2002), that § 7901 confers a statutory right on telephone companies to install telephone lines but that it does not confer a property right to do so. What *Cox* actually held, however, was that although the plaintiff therein "may have a right protected by a *federal* statute, . . . the statutory right . . . is not a property or liberty right protected by the Constitution." *See id.* at 1281 (emphasis added). The district court in *Cox* made no holding as to whether § 7901, a *state* law, confers a property right. Although, as defendants correctly note, *Cox* held "[t]he correct interpretation of § 7901 . . . is that telephone corporations have a contract with the state on the lines that they have already built, not the ones they want or may build in the future," *see id.*, such discussion was in the context of determining whether the plaintiff had a right guaranteed by the Contracts Clause of the Constitution, not whether plaintiff had a property right protected under the Due Process clause. Consequently, *Cox* provides no authority for a determination of whether AT & T has a constitutionally protected property right under § 7901.

■ To have a property interest protected by the Due Process Clause, AT & T must demonstrate that it has a "legitimate claim of entitlement" that is "defined by existing rules or understandings that stem from an independent source such as state law." *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also Golden State Transit Corporation v. City of Los Angeles*, 686 F.2d 758, 760 (9th Cir.1982) ("A property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law."). AT & T argues that § 7901 grants a "vested right" to access the public rights of way to install and maintain telephone lines. *See, e.g., Williams Communications v. City of Riverside*, 114 Cal. App.4th at 648, 8 Cal.Rptr.3d 96 (internal quotation and citation omitted) (holding § 7901 "is a continuing offer extended to telephone and telegraph companies to use the highways, which offer when accepted by the construction and maintenance of lines constitutes a binding contract based on adequate consideration, and that the vested right established thereby cannot be impaired by subsequent acts of the Legislature") (internal quotation and citation omitted). Whether AT & T has a property right in the use of *its* telephone lines to provide video programming, however, depends on the interplay between § 7901 and § 53066(e), which, as noted, is an unsettled issue of state law.

■ The doctrine of *Pullman* abstention "provides for abstention in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *See Richardson v. Koshiba*, 693 F.2d 911, 915 (9th Cir.1982) (internal citation and quotation omitted). *Pullman* abstention is appropriate where "(1) the complaint . . . touch[es] a sensitive area of social policy *into* which the federal courts should not enter unless there is no alternative to adjudication; (2) a definitive ruling on the state issues by a

state court could obviate the need for constitutional adjudication by the federal court; and (3) the proper resolution of the possibly determinative state law issue is uncertain." *See id.* Here, the second and third factors are clearly present. If the state court determines that § 7901 was never intended to convey to telephone companies rights to provide video programming, and that § 53066(e) applies to telephone companies, the due process issue evaporates. Moreover, as discussed above, the manner in which § 7901 and § 53066(e) apply to telephone companies is an issue of first impression. The only remaining question, then, is whether the instant action touches "a sensitive area of social policy," an issue neither party addresses. In *Richardson*, however, the Ninth Circuit observed that regulation of public utilities constitutes a "sensitive area" for purposes of *Pullman* abstention. *See id.* at 916 (citing *International Brotherhood of Electrical Workers v. Public Service Commission*, 614 F.2d 206, 212 (9th Cir.1980)); *see also International Brotherhood*, 614 F.2d at 212 (holding "a state's regulation of its public utilities is a sensitive area of social policy into which a federal court should not intrude unnecessarily"). Under California law, telephone companies are regulated as public utilities. *See Williams*, 114 Cal.App.4th at 647, 8 Cal.Rptr.3d 96. Accordingly, the Court finds the three factors for *Pullman* abstention have been met.

 Under *Pullman* abstention, "at the request of either party, the district court should retain jurisdiction of the federal constitutional issues, pending proceedings in the state courts." *See id.* at 918, 8 Cal.Rptr.3d 96. Accordingly, the Court will STAY further proceedings on AT & T's fourth claim for relief pending the conclusion of relevant state court proceedings.

## 5. Fifth Claim—First Amendment

 In the fifth claim for relief, AT & T seeks a declaratory judgment that "[t]he City's decision to prohibit [AT & T] from installing its network improvements unless [AT & T] first agrees to the cable franchise condition is an unlawful abridgement of [AT & T's] freedoms as guaranteed by the First Amendment." (*See* Compl. ¶ 71.)

 The parties agree that because the Franchise Condition is content-neutral, it is evaluated under intermediate scrutiny. (*See* Compl. ¶ 71; Motion at 19.) "[A] content neutral regulation will be sustained if 'it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *See Turner v. F.C.C.*, 512 U.S. 622, 662, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (quoting *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)). AT & T alleges the City's actions do not serve a significant government interest. (*See* Compl. ¶ 71.)

Defendants move to dismiss AT & T's First Amendment claim on the ground that the City "has made no final determination regarding terms of the agreement," and that, consequently, AT & T cannot prevail unless it can "demonstrate that there is no possible term of a franchise agreement that would be narrowly tailored to an important government interest." (*See* Motion at 19.) AT & T does not allege that the terms of the franchise agreement have not been finalized; it alleges only that the City forwarded to AT & T a 58–page proposed Cable Franchise Agreement, under which agreement AT & T "would be required to submit to an architectural design review process, agree to construction deadlines, comply with var-

ious tests and inspections, adopt system requirements, comply with interconnection requirements, pay a 5% franchise fee, agree to rate regulation, comply with reporting and review requirements, acknowledge the City's right to require the franchise and other conditions." (*See* Compl. ¶ 32.) AT & T alleges, however, that the imposition of the Franchise Condition, not the terms of the particular franchise agreement proposed by the City, constitutes a First Amendment violation. (*See id.* ¶ 72.) In other words, AT & T is alleging, in essence, that no franchise agreement would be constitutional under the First Amendment.

■ Where, as here, a plaintiff asserts a facial challenge to a government act, it "must establish that no set of circumstances exists under which the [a]ct would be valid." *See United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *see also Time Warner Entertainment Co., L.P. v. F.C.C.,* 93 F.3d 957, 972 (D.C.Cir.1996) (quoting *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095). As AT & T challenges the Franchise Condition itself, it must establish that no possible franchise agreement would be constitutionally valid. *See Time Warner,* 93 F.3d at 972 ("[A] holding of facial invalidity expresses the conclusion that the statute could never be applied in a valid manner.").

As defendants point out, numerous courts have upheld the terms of various cable franchise agreements as valid under the First Amendment. *See, e.g., Time Warner,* 93 F.3d at 971–973 (rejecting facial challenge under First Amendment to section of Cable Act permitting local franchise authorities to require as part of cable franchise that channel capacity be designated for public, educational, or governmental use); *Comcast of California, Inc. v. City of Walnut Creek,* 371 F.Supp.2d 1147, 1157–58 (N.D.Cal.2005) (denying motion for preliminary injunction; rejecting argu-

ment that City's requirement that cable company finalize renewal of its franchise agreement before upgrading its system violates First Amendment); *Comcast of California II, L.L.C. v. City of San Jose,* 286 F.Supp.2d 1241, 1250–52 (N.D.Cal.2003) (denying motion for preliminary injunction; rejecting claim that City's requirements for renewal of cable franchise violate First Amendment); *cf. Preferred Communications, Inc. v. City of Los Angeles, California,* 754 F.2d 1396, 1405 (9th Cir.1985) (rejecting argument that all regulation of cable operations is invalid under First Amendment; noting "Cable television ... requires the use of public facilities, and this provides a justification for some government regulation"); *Pacific West Cable Co. v. City of Sacramento,* 798 F.2d 353, 355 (9th Cir.1986) (noting First Amendment permits city to "regulate the noncommunicative aspects of cable broadcasting through reasonable time, place and manner restrictions"; affirming denial of cable company's motion for preliminary injunction "to be decreed free from the requirements of any system at all for the allocation of Sacramento's utility resources").

Accordingly, because AT & T cannot show that no possible franchise agreement would be valid under the First Amendment, defendants' motion to dismiss the fifth claim for relief will be GRANTED, and such claim will be DISMISSED with leave to amend to allege a First Amendment violation based on the terms of the particular franchise agreement proposed by the City.

### 6. Sixth Claim— § 1983

In the sixth claim for relief, AT & T seeks damages, pursuant to 42 U.S.C. § 1983, on the basis that the City's imposition of the Franchise Condition violates AT & T's rights under the "Due Process Clause and the Contracts Clause of the

United States Constitution, the TCA, the Cable Act, and FCC rules, regulations and orders promulgated pursuant thereto." (*See* Compl. ¶ 76.)

### a. Due Process

To the extent the § 1983 claim is based on the Due Process clause, the Court, for the reasons set forth above, finds *Pullman* abstention is appropriate, and such claim will be STAYED pending the conclusion of relevant state court proceedings.

### b. Contracts Clause

■ The one new basis for relief asserted under § 1983 is AT & T's allegation that the City has violated the Contracts Clause of the United States Constitution. AT & T alleges that § 7901 creates "a binding contract based on adequate consideration that establishes a vested right that cannot be impaired by subsequent acts of the Legislature." (*See* Compl. ¶ 86.) According to AT & T, "[o]nce a telephone corporation such as [AT & T] accepts the Section 7901 franchise, as [AT & T] has, its contractual access to the public rights-of-way are secured against impairment by either subsequent state acts, or by discretionary or incidental acts of local governments." (*See id.*) Consequently, according to AT & T, the City's imposition of the Franchise Condition violates the Contracts Clause of the United States Constitution because it impairs AT & T's "vested rights" created by § 7901. In particular, AT & T alleges that its "rights under the Section 7901 franchise are impaired because it is and has been precluded from upgrading and improving the communications facilities within the City to enable such facilities to carry traditional telecommunications services more reliably, to improve the features and performance of other existing services and to provide new higher bandwidth broadband services that will accompany the network improvements and also permit [AT & T] to deliver more

and better video services over the same network." (*See* Compl. ¶ 91.)

Defendants, relying on *Cox Communications v. City of San Marcos,* argue that the Contracts Clause claim is subject to dismissal because AT & T does not have a contractual right under § 7901 to install new facilities. In *Cox,* the district court held that "[t]he correct interpretation of § 7901 ... is that telephone corporations have a contract with the state on the lines *that they have already built, not the ones they want or may build in the future."* See *Cox,* 204 F.Supp.2d at 1281 (emphasis in original). As AT & T points out, however, it does not alleges in its complaint that it wishes to install new telephone lines but, rather, that it seeks "to upgrade its telecommunications network currently installed in the public rights-of-way ... located within the City of Walnut Creek." (*See* Compl. ¶ 1.) In *Cox,* the district court held that § 7901 "constitutes a contractual offer by the states, acceptance of which takes place when the corporation builds and operates facilities in the right-of-way." See *Cox,* 204 F.Supp.2d at 1281. Because AT & T alleges that it seeks to upgrade existing facilities, *Cox* does not require dismissal of AT & T's Contract Clause claim.

Whether the Franchise Condition impairs AT & T's asserted rights under § 7901 to upgrade its telecommunications network and to provide video programming without obtaining a franchise from the City, however, depends on the interplay between §§ 7901 and 53066(e), which, as discussed above, is an unsettled area of state law. For the reasons discussed earlier with respect to AT & T's due process claim, the Court will abstain from hearing AT & T's Contracts Clause claim, pursuant to the doctrine of *Pullman* abstention.

### c. TCA

■ For the reasons stated above, AT & T, in its first claim for relief, has failed

to state a claim under the TCA. Consequently, AT & T's § 1983 claim will be dismissed to the extent it relies on a violation of the TCA. Whether AT & T should be permitted to amend its § 1983 claim, to the extent such claim is based on a violation of the TCA, depends on whether a private right of action exists under the TCA.[3] *See Gonzaga University v. Doe,* 536 U.S. 273, 290, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) ("[I]f Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms—no less and no more than what is required for Congress to create new rights enforceable under an implied right of action.").

In its complaint, AT & T relies entirely on allegations that the City has violated 47 U.S.C. § 253(a);[4] in its opposition, however, AT & T suggests it also has a private right of action under 47 U.S.C. § 253(c). Neither the Supreme Court[5] nor the Ninth Circuit has addressed whether a private right of action exists under either § 253(a) or § 253(c), and other courts have reached differing conclusions on the matter. *See, e.g., Qwest Corp. v. City of Santa Fe, New Mexico,* 380 F.3d 1258, 1265–67 (10th Cir.2004) (finding no private right of action under any subsection of § 253); *TCG Detroit v. City of Dearborn,* 206 F.3d 618, 624 (6th Cir.2000) (finding private right of action under § 253(c)); *BellSouth Telecommunications, Inc. v. Town of*

*Palm Beach,* 252 F.3d 1169, 1189–91 (11th Cir.2001) (finding private right of action under § 253(c) but not under § 253(a)); *Sprint Telephony PCS, L.P. v. County of San Diego,* 377 F.Supp.2d 886, 900–903 (S.D.Cal.2005) (finding no private right of action under § 253(a)); *Qwest Communications Corp. v. City of Berkeley,* 202 F.Supp.2d 1085 (N.D.Cal.2001) (finding no private right of action under either § 253(a) or § 253(c)); *Pacific Bell Telephone Co. v. City of Hawthorne,* 188 F.Supp.2d 1169, 1172–75 (C.D.Cal.2001) (finding private right of action under § 253(c) but not under § 253(a)); *GST Tucson Lightwave, Inc. v. City of Tucson,* 950 F.Supp. 968, 969–71 (D.Ariz.1996) (finding no private right of action under § 253(c)); *NextG Networks of New York, Inc. v. City of New York,* 2004 WL 2884308 at *8–10 (S.D.N.Y.2004) (finding private right of action under both § 253(a) and § 253(c)).

This Court, having reviewed the above-referenced opinions, finds particularly persuasive the reasoning set forth in *Qwest Communications Corp. v. City of Berkeley,* 202 F.Supp.2d 1085 (N.D.Cal.2001), a case decided, by a court in this district, following both an exhaustive discussion and thorough consideration of the issue.

Accordingly, AT & T's § 1983 claim, to the extent such claim is based on a violation of the TCA, will be DISMISSED with prejudice.

---

3. The existence of a private right of action is irrelevant to AT & T's first claim, in which AT & T seeks a declaratory judgment that the City's imposition of the Franchise Condition violates the TCA. *See Bud Antle, Inc. v. Barbosa,* 45 F.3d 1261, 1269 (9th Cir.1994) ("Even in the absence of an explicit statutory provision establishing a cause of action, a private party may ordinarily seek declaratory and injunctive relief against state action on the basis of federal preemption.").

4. The sixth cause of action states: "As heretofore alleged, the City's actions violate [AT &

T]'s rights, privileges and immunities under ... the TCA (47 U.S.C. § 253)[.]" (*See* Compl. ¶ 76.) The only subsection of § 253 previously mentioned in the complaint is § 253(a). (*See id.* ¶¶ 8, 36–43.)

5. The Supreme Court recently held that a § 1983 action cannot be based on § 332(c)(7) of the TCA, but did not express an opinion as to whether a private right of action exists with respect to other sections of the TCA. *See City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005).

#### d. Cable Act

For the reasons stated above, AT & T has failed to state a claim under the Cable Act, and, accordingly, the § 1983 claim will be dismissed to the extent it relies on violation of the Cable Act. In light of this ruling, the Court does not reach defendants' argument that no private right of action exists under the Cable Act.

### 7. Seventh Claim—Declaratory Relief

In the seventh claim for relief, AT & T seeks a declaratory judgment "as to whether [AT & T] has the right to access the PROW's to install, upgrade and maintain its facilities, free from the City's Franchise Condition and any requirement for a cable franchise agreement." (*See* Compl. ¶ 80.) As this claim is entirely duplicative of AT & T's other claims, the seventh claim for relief will be DISMISSED.

### 8. Eighth Claim— § 53066; Impairment of Contracts Under Federal and California Constitutions

In the eighth claim for relief, AT & T seeks a declaratory judgment that § 53066 of the California Government Code does not apply to AT & T's telephone lines and does not require AT & T to obtain a franchise in order to provide video services via its telephone lines. (*See* Compl. ¶ 85.) For the reasons set forth above, the Court will decline, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the eighth claim, to the extent AT & T seeks a declaratory judgment as to the scope of § 53066, because such claim raises a "novel or complex issue of state law" as to the interplay between §§ 53066 and 7901.

AT & T further seeks a declaratory judgment that the City's imposition of the Franchise Condition violates the Contracts Clauses of the federal and California constitutions. (*See* Compl. ¶ 92.) For the reasons set forth above, the Court will abstain, pursuant to the doctrine of *Pullman* abstention, from hearing the eighth claim, to the extent such claim seeks a declaration that the imposition of the Franchise Condition violates the Contracts Clause of the federal Constitution. To the extent AT & T seeks a declaration that the imposition of the Franchise Condition violates the California Constitution, the Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over that claim, because it raises a novel or complex issue of state law, in particular, the scope of AT & T's rights and obligations under §§ 7901 and 53066(e).

### 9. Ninth Claim—Writ of Mandate

In the ninth and final claim for relief, AT & T seeks a writ of mandate, pursuant to § 1085 and/or § 1094.5 of the California Code of Civil Procedure. (*See* Compl. ¶¶ 93–104.) Specifically, AT & T alleges the City acted in violation of state and federal law, and, in particular, § 7901, by imposing the Franchise Condition on AT & T. (*See id.*) AT & T seeks a writ of mandate "requiring the City to grant the encroachment permit without the unlawful Franchise Condition, and to grant all other permits or approvals needed for installation, operation and maintenance of [AT & T]'s facilities within PROWs in the City for the provision of Project Lightspeed services without any requirement for a cable franchise agreement or similar agreement." (*See id.* ¶ 104.)

Because the scope of AT & T's rights under § 7901 is a novel issue of state law, the Court will decline, pursuant to 28 U.S.C. § 1367(c), to assume supplemental jurisdiction over AT & T's ninth claim for relief.[6]

---

6. AT & T's claim for a writ of mandate is a state law claim. Although the asserted bases

## CONCLUSION

For the reasons set forth above, the City's motion to dismiss and/or abstain is hereby GRANTED in part and DENIED in part, as follows:

1. The first claim for relief, in which AT & T seeks a declaratory judgment that the Franchise Condition is preempted by the TCA, is hereby DISMISSED with leave to amend.

2. The second claim for relief, in which AT & T seeks a declaratory judgment that the Franchise Condition is preempted by the Cable Act, is hereby DISMISSED with prejudice.

3. The Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the third claim for relief, in which AT & T seeks a declaratory judgment that § 7901 of the California Public Utilities Code authorizes it to transport video programming over its telephone lines without obtaining a separate franchise from the City. Said claim is hereby DISMISSED without prejudice to AT & T's refiling it in state court.

4. The Court abstains, pursuant to the doctrine of *Pullman* abstention, from hearing the fourth claim for relief, in which AT & T seeks a declaratory judgment that the imposition of the Franchise Condition violates the Due Process Clause. Said claim is hereby STAYED pending the conclusion of any relevant state court proceedings initiated by AT & T.

5. The fifth claim for relief, in which AT & T seeks a declaratory judgment that the Franchise Condition violates the First Amendment, is hereby DISMISSED with leave to amend.

6. The sixth claim for relief, pursuant to 42 U.S.C. § 1983, is hereby DISMISSED with prejudice to the extent it seeks relief based on the TCA and Cable Act, and STAYED, pursuant to the doctrine of *Pullman* abstention, to the extent it seeks relief based on the Due Process Clause or the Contracts Clause of the United States Constitution.

7. The seventh claim for relief, in which AT & T seeks declaratory relief, is hereby DISMISSED as duplicative of AT & T's other claims.

8. The Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the eighth claim for relief, to the extent AT & T seeks a declaratory judgment as to the scope of § 53066 of the California Government Code, and said claim is DISMISSED without prejudice to AT & T's refiling it in state court. To the extent AT & T seeks a declaratory judgment that the City's imposition of the Franchise Condition violates the Contracts Clause of the United States Constitution, such claim is STAYED, pursuant to the doctrine of *Pullman* abstention. To the extent AT & T seeks a declaratory judgment that the City's imposition of the Franchise Condition violates the California Constitution, the Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the claim, and DISMISSES said claim without prejudice to AT & T's refiling it in state court.

9. The Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the ninth claim for relief, in which AT & T seeks a writ of mandate pursuant to § 1085 and/or § 1094.5 of the

for issuance of such writ are the City's alleged violations of both federal and state law, the claim remains a state law claim. *See Rains v. Criterion Systems, Inc.,* 80 F.3d 339, 346 (9th Cir.1996) (holding when a state law claim "can be supported by alternative and inde-pendent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim").

California Code of Civil Procedure. Said claim is hereby DISMISSED without prejudice to AT & T's refiling it in state court.

10. AT & T may file an amended complaint no later than 20 days from the date of this order.

11. AT & T shall notify the Court within seven days after AT & T either (1) initiates state court proceedings relating to the issues as to which the Court has abstained under the doctrine of *Pullman* abstention, or (2) decides not to pursue those issues in state court. In the event AT & T elects to initiate such state court proceedings, it shall notify the Court, within seven days, of any state court ruling on the issues as to which this Court has abstained under the doctrine of *Pullman* abstention.

This order terminates Docket No. 20.

**IT IS SO ORDERED.**